Emmett L. MOON, Plaintiff,

v.

**GUARANTEE INSURANCE COMPANY, Defendant.**

No. 66107.

Supreme Court of Oklahoma.

July 12, 1988.

As Amended on Rehearing Oct. 11 1988.

Layon & Cronin, Tulsa by Thomas A. Layon, James R. Hicks, for plaintiff.

Williams, Clark, Baker & Earl, P.A., Tulsa by Roger R. Williams, Joseph F. Clark, Jr., for defendant.

ALMA WILSON, Justice:

The lessee of a rental vehicle brought an action in the United States District Court for the Northern District of Oklahoma seeking uninsured motorist coverage pursuant to a contract issued in the

course of the vehicle rental transaction. We answer the certified questions of law to this Court by the United States District Court for the Northern District of Oklahoma as follows:

1) Does 36 O.S. 1981 § 3636 mandate that an insurance company which insures a fleet of rental vehicles provide lessee an opportunity to purchase or reject uninsured motorist coverage? Yes.

2) Are car rental agency and its employees "insurance agents" within the meaning of 36 O.S. 1981 §§ 1422(3) and 1423(A) when in the normal course of each car rental transaction they sell automobile insurance under a pre-arranged plan with the insurance company to their lessee-customers and solicit premiums from the lessee-customers? Yes.

3) If so, is the insurance company estopped to deny that car rental agency employees act as its agents? Yes.

4) If a car rental proprietor rejects uninsured motorist coverage pursuant to 36 O.S. 1981 § 3636(F) on a fleet of cars that he owns for the purpose of renting the vehicles to the general public, is that rejection binding upon his customers who ultimately operate the vehicle? No.

5) Is an insurance carrier estopped from asserting a written rejection of uninsured motorist coverage which is signed only by the rental agency proprietor as a bar to a claim for uninsured motorist coverage benefits by the ultimate insured? Yes.

The facts giving rise to the federal court's certification of questions of law to this court are as follows. Guarantee Insurance Company entered into a "Business Auto Policy" insurance contract with Neal Wilderon Rental & Leasing d/b/a Thrifty Rent–A–Car of Bartlesville, Oklahoma. The effective dates of this contract of insurance covered the period from July 1, 1981, to July 1, 1982.

The schedule of coverages *affirmatively* included only:

1) *Liability Insurance*, defined by the policy as sums the insured must pay *as damages* because of bodily injury or property damage to which this insurance applies, caused by an accident and resulting from the ownership, maintenance or use of a covered auto.

2) *Theft* of a Covered Auto.

The schedule of coverages included *by operation of law:*

3) *Uninsured Motorist Coverage* for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom. 36 O.S. 1981 § 3636.

We note that although the policy did not affirmatively provide any coverage in the event of physical personal injury to the driver of a covered auto, (whether by way of the negligence of another or because of an uninsured motorist), that the contract by statutory operation of law did provide uninsured motorist coverage. However, on August 10, 1981, Guarantee Insurance Company issued "General Change Endorsement E–110b", wherein Neil Wilderon executed a "Notice of Rejection of Uninsured Motorist Coverage". This unilateral rejection by endorsement purports to *change* the original coverage to preclusively bind all yet-to-be-known insureds from coverage under the policy's statutorily mandated provision for personal injury protection against uninsured motorists.

During the effective period of the subject policy, on August 29, 1981, Emmett L. Moon went to the office of Neil Wilderon d/b/a Thrifty Rent–A–Car in the City of Bartlesville, Oklahoma, for the purpose of renting a motor vehicle. An employee of that car rental business placed three X's on a preprinted rental form and instructed Mr. Moon to initial two of them and sign his full name in the third place. Mr. Moon did as instructed, was given the keys and took possession of the vehicle. Upon inquiry, Mr. Moon was advised that he was "fully insured". In pertinent part, the small-print rental form included the following insurance contract:

| | |
|---|---|
| (23) PERSONAL ACCID– ENT INSURANCE (PAI) BY INITIALS RENTER AC- CEPTS OR DECLINES ACCIDENT INSURANCE AS DESCRIBED IN COPY OF PROVISIONS OF POLICY, AVAILABLE FOR INSPEC- TION AT THE RENTAL OF- FICE. | BENEFICIARY (IF NONE STATED, PAY ESTATE) _____ DECLINES_____ RELATIONSHIP ACCEPTS X ELM |

Emmett L. Moon placed his handwritten initials beside the "X" denoting *acceptance* of "Personal Accident Insurance." Pursuant to the contract, Moon was charged a fee in consideration of his acceptance of the Personal Accident Insurance; and he did not *reject* any form of insurance coverage made available to him. Subsequently, however, Moon was denied any recovery under the policy for severe multiple traumatic injuries sustained by reason of the negligence of an uninsured motorist. While operating the subject rental vehicle, Moon was struck head-on by an uninsured motorist who was travelling on the wrong side of the highway. The uninsured motorist has eluded authorities and private investigators since he left the scene of the accident on foot and disappeared into the surrounding Osage countryside.

## I

TITLE 36 O.S. 1981 § 3636 MANDATES THAT INSURANCE COMPANIES ISSUING, DELIVERING, RENEW- ING, OR EXTENDING POLICIES INSURING AGAINST LOSS RE- SULTING FROM LIABILITY IM- POSED BY LAW ARE LEGALLY BOUND TO PROVIDE UNINSURED MOTORIST COVERAGE WITHIN SUCH POLICIES OR SUPPLEMEN- TAL THERETO.

■ The legislative mandate of 36 O.S. 1981 § 3636(A) and (B) is expressly stated in this way:

(A) *No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state* with respect to a motor vehicle registered or principally garaged in this state *unless the policy includes the coverage described in* subsection *(B)* of this section. [*Emphasis added.*]

The mandatory coverage as described in subsection (B) of 36 O.S. 1981 § 3636 is as follows:

(B) The policy referred to in subsection (A) of this section *shall provide coverage* therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled *to recover damages from owners or operators of uninsured motor vehicles* and *hit-and-run motor vehicles* because of bodily injury, sickness or disease, including death resulting therefrom.... [Emphasis added.]

■ This Court in *Keel v. MFA Insurance Company*, 553 P.2d 153 (Okla.1976), at p. 155, unequivocally stated that,

The uninsured motorist statute re- quires that each liability policy must provide uninsured motorist coverage, unless the insured rejects it in writing.

. . . . .

*The literal import of the statute leaves no doubt.* It directs no automobile policy shall issue in this state unless it offers coverage for payment within specified limits of what an uninsured motorist would be liable for to an insured for damages for bodily injuries. *Every policy must offer the coverage, unless rejected in writing.* [Emphasis added.]

The *Keel* rationale, *above*, dictates that the only way a "policy" may be said to "offer" uninsured motorist coverage is by the terms of such language as appears within the written provisions of the policy. This conclusion is consistent with the legislative

intent favoring inclusion of uninsured motorist coverage, as acknowledged by this Court in *Chambers v. Walker*, 653 P.2d 931, 935 (Okla.1982); and it is further consistent as the legal corollary or mirror image of the subsequent statutory directive for written rejection, as set forth in Subsection (F) of 36 O.S. 1981 § 3636:

> (F) The named insured shall have the right to reject such uninsured motorist coverage *in writing*, and except that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy where the named insured had rejected the coverage in connection with a policy previously issued to him by the same insurer.

Accordingly, uninsured motorist coverage is required to be *offered by written provision* within or supplemental to an original policy, (and if not so "offered", then such is written into the policy by operation of law), and must likewise thereafter be waived by *written rejection*. Thus, the burden of proof is upon the insurer to come forward with a written rejection in order to relieve the insurer from its duty to provide the statutory uninsured motorist coverage. Allegations of oral offers of uninsured motorist coverage fall short of the tenor of proof required by 36 O.S. 1981 § 3636, for there is but one statutorily sanctioned method by which the mandatory uninsured motorist coverage provided for persons insured under a liability policy may thereafter be rejected.

## II

### THERE IS BUT ONE STATUTORILY SANCTIONED METHOD BY WHICH MANDATORY UNINSURED MOTORIST COVERAGE MAY BE REJECTED PURSUANT TO AN ORIGINAL POLICY

██ Pursuant to 36 O.S. 1981 § 3636(F), uninsured motorist coverage is provided within or supplemental to an original policy of insurance and may thereafter be waived by the named insured, *provided* such waiver is made by *written rejection*. The sole statutory exemption from the requirement of written rejection applies only to renewals of policies where the named insured has already supplied the insurer with a written rejection of uninsured motorist coverage pursuant to the previous policy. Title 36 O.S. 1981 § 3636 does not purport to exempt every renewal, but only such renewals as may be shown to include a previous written rejection of the mandatory uninsured motorist coverage.

## III

### THE TERM, "NAMED INSURED", WITHIN THE CONTEXT OF 36 O.S. 1981 § 3636, APPLIES TO PERSON NAMED AS INSURED IN VEHICLE RENTAL/INSURANCE CONTRACT

██ In the present case, Guarantee Insurance Company contends that Mr. Moon is not entitled to the mandatory uninsured motorist coverage because the insurance policy negotiated between Guarantee and the Car Rental does not list Moon as a "named insured". Inasmuch as the policy was issued *prior* to the Car Rental securing any insurable interest in the person of Emmett Moon, Moon could not have become a named insured at the time the insurance company and the car rental agency entered into their contract. Thus, were this the only relevant time of consideration, no driver of a rental vehicle would be afforded the opportunity to partake the coverage which is legislatively conferred to all persons who purchase liability coverage. However, the insurance coverage here in contention is not that which was previously negotiated between Guarantee and the Car Rental, but that coverage which Moon purchased on August 29, 1981. As the sole insured named in the agreement presented to him, Moon is entitled to the mandatory uninsured motorist coverage, for Moon did not reject entitlement thereto as provided by 36 O.S. 1981 § 3636(F); and the Car Rental could not reject same for an unknown purchaser of bodily liability insurance in whom it could not claim an insurable interest prior to entry into a contractual agreement for insurance. Thus, the case at hand is fundamentally distinguishable from cases involving a rejection of unin-

sured motorist coverage by a *head of household*. It is distinguishable from the cases dealing with the permissive usage of a vehicle by *employees* of the named insured, as well. Here the insured purchased insurance in the capacity of "named insured" and a fee for such insurance coverage was extracted from him. The insured here could not fall under the umbrella of the Car Rental's policy with Guarantee, absent an insurable interest in the person of the insured at the time the contract was entered into. In this regard the distinction between insuring property (i.e., vehicles); and insuring people (i.e., Emmett Moon) is of paramount significance. This Court has stated that, *"Any attempt to tie uninsured motorist coverage to automobiles alone, rather than to people must fail".* *State Farm Mutual Automobile Insurance Company v. Wendt,* 708 P.2d 581 (Okla.1985); *Also see, Cothren v. Emcasco Insurance Company,* 555 P.2d 1037 (Okla.1976). Consequently, a car rental agency and its employees necessarily function as agents of an insurance company when they solicit fees and sell insurance to persons with whom they can claim no prior insurable interest. Otherwise, coverage would depend upon vehicular status alone. Such is contrary to the established precedent.

### IV

### A CAR RENTAL AGENCY AND/OR ITS EMPLOYEES ACT AS INSURANCE AGENTS PURSUANT TO 36 O.S. 1981 § 1422(3) WHEN VEHICLE RENTAL AGREEMENT INCLUDES CONTRACT FOR INSURANCE AND RENTEE TENDERS CONSIDERATION.

 Our conclusion today is, moreover, dictated by the statutory language of 36 O.S. § 1422(3) which states that "[a]ny person not duly licensed as an insurance agent ... who solicits a policy of insurance on behalf of an insurer shall be deemed as acting as an insurance agent within the intent of this act, ... and such company by issuing such policy of insurance shall thereby accept and acknowledge such person as its agent in such transaction." This Court looks further to the language found in 36 O.S. 1981 § 1423(A) which provides "[e]very agent ... who solicits or negotiates an application for insurance of any kind shall ... be regarded as representing the insurer...." The Oklahoma Insurance Code defines insurance policy or insurance contract as *"any* contract of insurance ... issued, proposed for issuance, or intended for issuance by an entity subject to this Code." 36 O.S.Supp.1987 § 1252(5). The rental agency and its employees clearly fell within the statutory definition of insurance agent when they solicited and negotiated an insurance contract with Mr. Moon. Further, the insurance company is estopped to deny that the rental agency employees are its agents by virtue of the 36 O.S. 1981 § 1422(3) which mandates that the insurance company *"shall"* thereby accept and acknowledge such person as its agent.

### V

### A CAR RENTAL PROPRIETOR CANNOT PREEMPT DECISION OF NAMED INSURED IN VEHICLE RENTAL/INSURANCE CONTRACT AS TO UNINSURED MOTORIST COVERAGE.

 We have held that the rental agency acted as the agent of Guarantee Insurance Company in the solicitation of Mr. Moon's contract for liability insurance, and in extracting a fee for insurance coverage.[1] An insurance agent is in no wise authorized to preempt the decision of a prospective purchaser, whether or not to waive the right to reject uninsured motor-

---

1. Whether a fee was extracted from Emmett Moon, for liability insurance, in the form of separate charge or as part of the base rental charge, Mr. Moon purchased insurance. By the mandate of Okla.Stat. tít. 36, § 3636 (1981), uninsured motorist coverage was written into the policy and could be waived only by written rejection. Because Mr. Moon made no written rejection, he is entitled to the legislatively conferred coverage. The car rental proprietor's rejection of uninsured motorist coverage on his fleet of rental cars was not binding upon his customer who ultimately operated the vehicle.

ist coverage, as such coverage is fundamental to the terms of every contract for liability insurance, by operation of law. Accordingly, a prearranged rejection by an insurance agent and that agent's own principal is a nullity, for it attempts to withhold from the purchaser of liability insurance the legislative grant of statutory coverage included in every liability insurance policy. The subsequent right to waive the statutory coverage by written rejection is ascribed only to the purchaser of liability insurance in the capacity of "named insured."

CERTIFIED QUESTIONS ANSWERED.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES and KAUGER, JJ., concur.

LAVENDER, SIMMS, OPALA and SUMMERS, JJ., dissent.