MARVIN DALE HARTZ, MAXINE HARTZ, DIANE YVONNE THOLL, AND HAZEL HARTZ, WIDOW OF HERBERT WAYNE HARTZ, DECEASED, APPELLANTS, v. RICKY DEE MITCHELL, MARY D. FRANICK, ANNA FRANICK, THRIFTY RENT-A-CAR SYSTEM, INC., McCOOL ENTERPRISES, DBA THRIFTY RENT-A-CAR, AND SECURITY INSURANCE COMPANY OF HARTFORD, RESPONDENTS.

No. 21333

December 12, 1991                                    822 P.2d 667

*George T. Bochanis,* Las Vegas, for Appellants.

*Thorndal, Backus, Maupin & Armstrong,* and *Deborah A. Mann,* Las Vegas, for Respondents.

## OPINION

*Per Curiam:*

Appellants were tragically victimized by an intoxicated driver who inflicted death and injury on their family. Their quest for relief in the form of damages has been substantially frustrated as neither the tortfeasor nor the liability coverage applicable to the vehicle he was driving provided adequate sources of compensation to cover appellants' losses. Appellants therefore turned to the rental car agency from which they obtained the vehicle they were using at the time of the collision, and its insurer for additional sources of recovery.

Basically, appellants contend that respondents Security Insurance Company of Hartford (Security) and McCool Enterprises, dba Thrifty Rent-A-Car (Thrifty) and Thrifty Rent-A-Car System, Inc.[2] had statutory and contractual duties to offer or provide uninsured/underinsured motorist (UM/UIM) coverage to appel-

---

[2]Thrifty Rent-A-Car System, Inc. is a corporate entity unrelated to McCool Enterprises, dba Thrifty Rent-A-Car. The district court granted the corporation's motion to quash and correctly determined that Thrifty Rent-A-Car System, Inc. was never a party to the action below. Obviously, despite its appearance in the case caption, it is not a party to this appeal.

lants, and that respondents breached their respective duties. After careful review, we conclude that the district court was correct in granting summary judgment to respondents, and therefore affirm.

In 1985, members of the Hartz family arrived in Las Vegas for a family vacation. Herbert Wayne Hartz rented a vehicle from Thrifty. Appellants contend that although the Thrifty rental agreement offered liability insurance and any other insurance under applicable law, Herbert Hartz was not offered UM/UIM coverage as required by Nevada law. *See* NRS 687B.145(2);[3] NRS 690B.020(1) and (2).[4]

The referenced Nevada statutes require insurance companies to offer to their insureds UM/UIM coverage equal to the limits of the insured's bodily injury coverage. *See* Baker v. Criterion Ins. Co., 107 Nev. 25, 27, 805 P.2d 599, 600 (1991). NRS 690B.020(1) permits only written rejection of UM insurance. NRS 687B.145, which covers the statutory obligations applicable

---

[3]NRS 687B.145(2), as it existed when this cause of action arose, provided:

> 2. Insurance companies doing business in this state must offer uninsured motorist coverage equal to the limits of bodily injury coverage sold to the individual policyholder. Uninsured motorist coverage must include a provision which enables the insured to recover up to the limits of his own coverage any amount of damages for bodily injury from his insurer which he is legally entitled to recover from the owner or operator of the other vehicle to the extent that those damages exceed the limits of the bodily injury coverage carried by that owner or operator.

[4]The 1985 versions of NRS 690B.020(1) and (2) provided as follows:

> 1. No policy insuring against liability arising out of the ownership, maintenance or use of any motor vehicle may be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless coverage is provided therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages, from owners or operators of uninsured or hit-and-run motor vehicles, for bodily injury, sickness or disease, including death, resulting from the ownership, maintenance for use of the uninsured or hit-and-run motor vehicle; *but no such coverage is required in or supplemental to a policy issued to the State of Nevada or any political subdivision thereof, or where rejected in writing, on a form furnished by the insurer describing the coverage being rejected, by an insured named therein,* or upon any renewal of such a policy unless the coverage is then requested in writing by the named insured. The coverage required in this section may be referred to as "uninsured vehicle coverage."
>
> 2. The amount of coverage to be provided must be not less than the minimum limits for bodily injury liability insurance provided for under the Motor Vehicle Safety Responsibility Act (chapter 485 of NRS), but may be in an amount not to exceed the bodily injury coverage purchased by the policyholder.

(Emphasis added.)

to both uninsured and underinsured motorist coverage, expressly refers to NRS 690B.020, the earlier uninsured motorist statute. The latter statute is silent as to whether a rejection of underinsured motorist protection must be in writing.

Thrifty had previously rejected UM insurance coverage on an endorsement form provided by its liability insurer, Security. Therefore, the Thrifty rental agreement does not provide its customers with an option to purchase UM/UIM coverage.[5] Thrifty, having effectively rejected UM coverage under its own master policy, had no such coverage to offer its customers.

Unfortunately, two days after renting the Thrifty vehicle, Herbert Hartz, the driver of the Thrifty vehicle, was killed in a collision with an intoxicated driver. Three other members of the Hartz family were severely injured. The family was eventually paid the $30,000 statutory minimum liability carried by the intoxicated driver. See NRS 485.185; NRS 485.105. Obviously, the family's losses and damages substantially exceeded the available liability coverage applicable to the multi-vehicle, multi-claimant accident.

Nevada has a strong public policy interest in assuring that individuals who are injured in motor vehicle accidents have a source of indemnification. Our financial responsibility law reflects Nevada's interest in providing at least minimum levels of financial protection to accident victims.

An insurance agent in Nevada is subject to statutory regulation, licensing, administrative standards and financial safeguards.[6] Automobile rental agents are not expressly subject to the provisions of NRS Chapter 683A which regulates insurance representatives in this state. Moreover, Thrifty does not fall within Nevada's statutory definition of an "insurance agent," which otherwise would have subjected Thrifty to regulation and a mandatory obligation to offer UM/UIM insurance through insurance contracts.

---

[5]The rental agreement did not specifically state that this protection was *not* available. There is no contention in the record on appeal that any Thrifty employee expressly represented to Herbert Hartz that UM insurance was provided by the automobile rental agreement.

[6]NRS 683A.030(1) defines a resident agent as follows:

> An "agent" is an individual, firm or corporation appointed by an insurer to solicit applications for insurance or annuity contracts or to negotiate for such contracts on its behalf, and if authorized to do so by the insurer, to effectuate and countersign insurance contracts.

NRS 683A.040(1) defines the role of a resident broker:

> A "broker" is an individual, firm or corporation who, not being an agent of the insurer, as an independent contractor and on behalf of the

When the language of a statute is plain and unambiguous, a court may not add to or extend its ordinary meaning. City Council of Reno v. Reno Newspapers, 105 Nev. 886, 891, 784 P.2d 974, 977 (1989); Cirac v. Lander County, 95 Nev. 723, 729, 602 P.2d 1012, 1015 (1979). Impliedly, the legislature recognized that automobile rental agencies offer their customers the opportunity to acquire such coverage as the rental agency itself has, as a supplement to the customers' own insurance.[7] Automobile rental agencies thus constitute, in effect, intermediaries between their rental customers and the latters' own insurers.

In Nevada, uninsured, and by extension, underinsured, motorist coverage may be validly rejected by the lessor of a rental vehicle. NRS 690B.020(1); *see also* 2 I. Schermer, *Automobile Liability Insurance* § 23.03[1A] (1991). Thrifty validly rejected Security's offer of UM insurance in a signed writing. Although the form containing Thrifty's rejection covered only UM insurance, we have previously held that when insurers are "required to make uninsured motorist coverage available, . . . that coverage must *include* coverage against underinsured motorists." Hall v. Farmers Ins. Exch., 105 Nev. 19, 21, 768 P.2d 884, 885 (1989) (underinsured motorist coverage is merely a component of uninsured motorist coverage and does not exist separately) (emphasis in text). In clear effect, Thrifty declined to purchase both UM and UIM insurance from Security, its insurer. Furthermore, the lessor's action has been held to be binding upon the lessee, even

___

insured solicits, negotiates or procures insurance or annuity contracts or the renewal or continuation thereof for insureds or prospective insureds other than himself.

Nevada's statutory scheme differs from that cited in Moon v. Guarantee Ins. Co., 764 P.2d 1331 (Okla. 1988), a case upon which appellants vigorously rely. The *Moon* court relied in part on Okla. Stat. tit. 36, § 1422(3) which states that "[a]ny person not duly licensed as an insurance agent . . . who solicits a policy of insurance on behalf of an insurer shall be deemed as acting as an insurance agent within the intent of this act, . . . and such company by issuing such policy of insurance shall thereby accept and acknowledge such person as its agent in such transaction." *Moon*, 764 P.2d at 1336. In addition, the court cited Okla. Stat. tit. 36, § 1423(A) which provides that "[e]very agent . . . who solicits or negotiates an application for insurance of any kind shall . . . be regarded as representing the insurer . . . ." *Moon*, 764 P.2d at 1336.

[7]Thrifty maintains that the majority of individuals renting automobiles also own vehicles covered by insurance; as a result, a Nevada resident or a resident of a state with a statutory scheme similar to that of Nevada, has mandatory liability insurance and has been offered uninsured motorist coverage up to the limits of liability coverage. Any such coverage would apply to the insured's use of the rental vehicle.

when the lessee was not aware of the rejection.[8] *See* Darnaby v. Greenstein Trucking Co., 425 So.2d 656, 658 (Fla.Dist.Ct.App. 1983).

Despite the additional hardship appellants may suffer, we are forced to conclude that Thrifty did not violate either a contractual or a statutory duty to appellants as a matter of law. It follows, therefore, that since Security dutifully offered UM coverage to Thrifty, Security was also entitled to summary judgment. Accordingly, the judgment entered below is affirmed in its entirety.

MOWBRAY, C. J., SPRINGER, STEFFEN and YOUNG, JJ., and CHRISTENSEN, D. J.[9], concur.

---

[8]Other cases reaching a similar result are: Lapp v. Transport Indem. Co., 210 Cal. Rptr. 135, 136 (Cal.Ct.App. 1985) (truck rental company properly waived uninsured motorist coverage and the waiver was binding upon the truck lessees who were permissive users lacking any direct contractual relationship with the insurer); Darnaby v. Greenstein Trucking Co., 425 So.2d 656, 658 (Fla.Dist.Ct.App. 1983) (truck lease did not lead the lessee to believe that the lessor would provide uninsured motorist coverage); *cf.* Shaffer v. Southern Union Gas Co., 539 P.2d 902 (Ariz. 1975) (legislature did not intend to give an additional insured the right to accept or reject uninsured motorist coverage when he did not pay the premium or contract for the coverage); *but see* Quittem v. National Car Rental Systems, 582 So.2d 1337, 1340 (La.Ct.App. 1991) (rental car agencies must offer lessees the opportunity to accept or reject UM coverage); MacKenzie v. Avis Rent-A-Car Systems, 369 So.2d 647, 648 (Fla.Dist.Ct.App. 1979) (summary judgment was improper where the rental agreement was ambiguous as to the key issue of whether UM coverage is a standard provision).

[9]The Honorable Carl J. Christensen, Judge of the Eighth Judicial District, was designated by the Governor to sit in the place of THE HONORABLE ROBERT E. ROSE, Justice. Nev. Const., art. 6, § 4.