ALAMO RENT-A-CAR, INC., Appellant, *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY AND VALLEY FORGE INSURANCE COMPANY, (CNA GROUP), Respondents.

No. 28806

Feburary 26, 1998                    953 P.2d 1074

*Fitzgibbons & Anderson,* Las Vegas, for Appellant.

*Pearson & Patton* and *John P. Skalak,* Las Vegas, for Respondent State Farm.

*Schofield & Grant,* Las Vegas, for Respondent Valley Forge.

*Kerr & Associates,* Las Vegas, for Amicus Curiae Malco Enterprises.

## OPINION

*Per Curiam:*

This is an appeal from several consolidated cases raising identical issues. Respondents State Farm Mutual Automobile Insurance Company ("State Farm") and Valley Forge Insurance Company, (CNA Group) ("Valley Forge") provide automobile insurance for four individuals (hereinafter "renters") who each rented vehicles from appellant Alamo Rent-A-Car ("Alamo"). The State Farm and Valley Forge policies provide that their

coverage of a rental vehicle is secondary to other applicable coverage. Alamo's rental contract with each of the renters provides that its coverage is secondary to the renters' personal automobile liability coverage. Each of these renters was subsequently involved in an accident caused by the renters' negligence while driving a vehicle rented from Alamo. State Farm and Valley Forge settled the claims against their insureds—the renters—and brought subrogation actions against Alamo. The district court held that Alamo and State Farm/Valley Forge were required to pro-rate the loss according to the respective amounts of coverage they provided to the renters/insureds. Alamo appeals.

## FACTS

This case raises a coverage dispute between a self-insured short-term car rental agency and the automobile liability insurers covering four renters of vehicles from that agency. State Farm insured three of the renters[1] and Valley Forge insured the fourth.[2] Each of these insureds rented vehicles[3] from Alamo and were subsequently involved in accidents caused by their negligence while driving an Alamo rental car. State Farm settled the claims against its three insureds and then brought three subrogation

---

[1]The policy issued to State Farm's three insureds provides:

If . . . a *non-owned car* . . . has other vehicle liability coverage on it, then this coverage is excess.

[2]The policy issued to Valley Forge's insured provides:

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.

[3]The rental contract signed by each of the insureds provides:

**LIABILITY INSURANCE:** Unless contrary to state law or otherwise provided by this agreement. *If there is no other valid and collectible insurance, whether primary, excess or contingent, available to the renter . . . sufficient to meet minimum financial responsibility law requirements, then, . . . Alamo shall provide protection against liability for bodily injury, death or property damage to others up to the minimum financial responsibility limits required by applicable law.* Such protection shall be provided through either an insurance policy or a certificate of self-insurance . . . . *[The renter] agree[s] that any amount over this minimum will be covered by [the renter] or by [the renter's] liability policy and [the renter] indemnify [Alamo] for any losses that exceed the minimum limits.*

The Alamo rental contract further provides:

[The renter] AND [Alamo] REJECT UNINSURED MOTORIST COVERAGE TO THE EXTENT PERMITTED BY LAW. *Any other coverage or benefits . . . are provided **only** if (A) Required by state law and (B) There is no other valid and collectible insurance available . . . .*

(emphasis added).

actions against Alamo. Valley Forge did the same with respect to its insured party.[4]

Alamo then filed a complaint for declaratory judgment asking the court to declare that each renter's personal automobile liability policy with State Farm or Valley Forge "is primary for any loss incurred due to a motor vehicle accident when the renter is driving a car rented by Alamo." In the alternative, Alamo asked the court to pro-rate "according to the amount of coverage available between the insurer of the renter/driver and the coverage available through the self-insurance certificate of Alamo." The four subrogation actions and the declaratory action were consolidated and all of the parties filed motions for summary judgment.

In its "Order and Summary Judgment," the district court concluded "that the 'other insurance' clause in both the Alamo rental contract and the policies of State Farm and Valley Forge Insurance Companies are mutually repugnant and therefore void." The lower court ruled that "all available coverages must be pro-rated based on the personal injury liability limits." Alamo appeals, asserting that the district court erred in ordering proration of all available coverage and concluding that Alamo's "other insurance" clause is void.

## DISCUSSION

There is nothing in Nevada's statutory scheme governing short-term vehicle lessors that establishes priority of coverage between a rental agency and the renter's own automobile liability insurer. Pursuant to NRS 482.295, and NRS 485.380[5] Alamo qualified as a self-insurer. In Co-operators Ins. v. Allstate Rent-A-Car, 107 Nev. 17, 19, 804 P.2d 1050, 1051 (1991), we noted that "NRS 482.295, requiring rental car companies to insure their vehicles, is silent as to whether a car rental company's insurance is primary or secondary coverage." In *Co-operators Ins.*, the driver of a rental car negligently caused an accident and the issue before this court was whether the rental agency's self-insurance policy, or the driver's personal policy was primarily liable. 107 Nev. at 18, 804 P.2d at 1051. To resolve the issue, this court reasoned:

---

[4]The three claims against State Farm's insureds were settled in the amounts of $12,000, $9300, and $1200. Valley Forge settled the claim against its insured in the amount of $7500.

[5]During the times at issue, NRS 482.295 provided:

The department [of motor vehicles] shall not register a vehicle intended to be leased by a short-term lessor until the owner demonstrates to the department his financial ability to respond to damages by:
1. Providing proof of financial responsibility as that term is defined in NRS 485.105; or

Absent legislative directive, we must look to the individual policies in question. Where one policy explicitly defines its liability, and the other does not, the policy with the more specific language controls.

*Id.* at 19-20, 804 P.2d at 1052. In that case, the rental contract expressly provided that the driver/renter's personal insurance would be primary. *Id.* at 20, 804 P.2d at 1052. Unlike the instant case, the driver's personal insurance policy did not have a comparable clause stating that its coverage on a rental vehicle would merely be excess. *Id.* Thus, the case at bar raises a novel issue.

In Travelers Insurance Co. v. Lopez, 93 Nev. 463, 468, 567 P.2d 471, 474 (1977), we adopted the reasoning of Lamb-Weston, Inc. v. Oregon Auto. Ins. Co., 341 P.2d 110 (Or. 1959), the "Lamb-Weston" rule, concluding that where the "other insurance" clause in one policy conflicted with a similar clause in another policy, the clause was null and void. The *Travelers* court expanded:

If, however, both clauses were held to apply, the situation could arise where both companies disclaimed liability, relying on the provisions of the "other insurance" clause, thus resulting in inevitable unnecessary litigation. Circularity was one of the major concerns of the . . . *Lamb-Weston* court[].

93 Nev. at 468, 567 P.2d at 474. *Travelers* cited Werley v. United Services Auto. Ass'n, 498 P.2d 112, 117, 119 (Alaska 1972), wherein that court adopted the rule that mutually repugnant escape, excess, or pro-rata clauses would be disregarded and losses would be pro-rated according to the limits of both policies. *Id.*

In a subsequent case, Yosemite Ins. v. State Farm Mut., 98 Nev. 460, 653 P.2d 149 (1982), a garage liability insurer attempted to lower its limits from 100/300 to 15/30 with regard to loss arising from an accident which occurred while a garage patron was test-driving a vehicle owned by the garage. The garage insurance policy language provided that:

---

2. Qualifying as a self-insurer pursuant to NRS 485.380.

Alamo received its certificate of self-insurance, pursuant to NRS 485.380(1)-(2) (1993), which states:

1. Any person in whose name more than 10 motor vehicles are registered in the State of Nevada may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the [driver's license] division as provided in subsection 2.

2. The division may, upon the application of such a person, issue a certificate of self-insurance when it is satisfied that he possesses and will continue to possess the ability to pay judgments obtained against him.

[G]arage customers are not insureds . . . except in accordance with the following additional provisions:

. . . .

3. If there is no other valid and collectible insurance, whether primary, excess or contingent, available to the garage customer, this insurance shall apply but the amount of damages . . . payable under this policy shall not exceed the applicable financial responsibility limit.

*Id.* at 462 n.2, 653 P.2d at 149-50 n.2. Quoting *Travelers,* we concluded that "an insurance company could not seek to 'defer or limit its liability' on the basis of the availability of other insurance." *Yosemite,* 98 Nev. at 463, 653 P.2d at 150.

We conclude that Alamo falls outside the reach of the Lamb-Weston rule because it is a rental agency rather than an insurance company.[6] Although a self-insurer provides "an insurance function,"[7] there is no statutory language that prohibits Alamo from contracting with renters for a position of secondary coverage. A rental agency offers primary insurance only when the renter agrees to purchase an *extra* protection plan.[8] *See* Budget Rent A Car Systems v. Taylor, 626 So. 2d 976, 978 (Fla. Ct. App. 1993) (concluding that a self-insured car rental agency's liability to its renter was not that of an insurance company, and reasoning that, "providing compliance [with the financial responsibility law] through self-insurance is not the same as issuing a motor vehicle liability policy.") *See also* USF&G v. Hanover Ins. Co., 632 N.E.2d 402 (Mass. 1994).

---

[6]Thus, although Travelers Insurance Co. v. Lopez, 93 Nev. 463, 567 P.2d 471 (1977), cited a case which held that escape, pro-rata, or excess clauses could be deemed mutually repugnant such that coverage should be pro-rated, we conclude that this holding does not apply to car rental agencies which are not in the general business of selling insurance.

[7]NAC 485.060(3) provides that the application to become self-insured must

contain a statement that the applicant realizes that in self-insuring, he is performing an insurance function and expressly agrees, as a condition to granting of a certificate of self-insurance, to abide by the statutes of this state concerning unfair practices in settling claims and any regulations adopted thereunder the commissioner of insurance.

[8]In Hartz v. Mitchell, 107 Nev. 893, 822 P.2d 667 (1991), we distinguished rental agencies from insurance companies. In *Hartz,* this court stated that rental agencies do not fall within Nevada's statutory definition of an "insurance agent" and, therefore, are not required to offer UM/UIM coverage in their contracts. *Id.* at 896, 822 P.2d at 669. In addressing that issue, we reasoned:

Impliedly, the legislature recognized that automobile rental agencies offer their customers the opportunity to acquire such coverage as the rental agency itself has, as a supplement to the customers' own insur-

"Nevada has a strong public policy interest in assuring that individuals who are injured in motor vehicle accidents have a source of indemnification. Our financial responsibility law reflects Nevada's interest in providing at least minimum levels of financial protection to accident victims." Hartz v. Mitchell, 107 Nev. 893, 896, 822 P.2d 667, 669 (1991). This law does not mandate that the short-term lessor is primarily liable where the renter has its own insurance. In the instant case, Nevada's public policy of providing minimum levels of coverage to injured persons is always satisfied—the renter's insurance will provide coverage and, in the absence of such coverage, Alamo will step in and compensate the victim up to the minimum limits.

We conclude it is better policy to make an insurance company the primary insurer over a rental agency which is not in the business of underwriting insurance for individual drivers. The nature of a car rental agency's business—renting cars to strangers for short periods of time—is not conducive to a finding that it is in the insurance business; unlike a full-time insurance company, Alamo does not review renters' driving histories, nor (in the absence of the renter's purchase of extra protection) does Alamo collect a premium from its "insureds." The rental agency does not have the ability to raise a single negligent driver's premiums to cover its losses, but would be forced to raise rental rates across the board for all future renters.

Based on the law and policy concerns, we conclude that State Farm and Valley Forge assumed primary liability as opposed to Alamo.

## CONCLUSION

We conclude that State Farm and Valley Forge are primarily liable for coverage. Because the damages did not exceed the renters' levels of insurance coverage, we conclude that Alamo incurred no liability pursuant to the rental agreement. Therefore, we reverse the district court's holding which pro-rated coverage between Alamo and State Farm. We remand this case to the district court with instructions to issue an order consistent with this opinion.[9]

---

ance. Automobile rental agencies thus constitute, in effect, intermediaries between their rental customers and the latters' own insurers.

*Id.* at 897, 822 P.2d at 669-70 (footnote omitted).

[9]THE HONORABLE A. WILLIAM MAUPIN, Justice, did not participate in the decision of this matter.