FILED

NOT FOR PUBLICATION

JAN 22 2010

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

VIGILANT INSURANCE COMPANY;
GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

Plaintiffs - Appellees,

v.

LINCOLN GENERAL INSURANCE
COMPANY,

Defendant - Appellant,

and

DTG OPERATIONS, INC.,

Defendant.

No. 08-17212

D.C. No. 2:06-cv-01607-LDG-
LRL

MEMORANDUM *

Appeal from the United States District Court
for the District of Nevada
Lloyd D. George, District Judge, Presiding

Argued and Submitted January 13, 2010
San Francisco, California

Before: NOONAN, HAWKINS and M. SMITH, Circuit Judges.

---

\* This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

This is an action for contribution among insurers arising under Nevada law. We have jurisdiction pursuant to 28 U.S.C. §§ 1332 and 1291. As the facts and procedural history are familiar to the parties, we recite them here only as necessary to explain our decision.

Defendant-Appellant Lincoln General Insurance Co. (Lincoln) appeals the district court's grant of summary judgment in favor of Plaintiffs-Appellees Vigilant Insurance Co. (Vigilant) and Government Employees Health Insurance Co. (GEICO). By its order, the district court held that Lincoln was required to reimburse Vigilant and GEICO for the $250,000 each contributed to settle an underlying personal injury lawsuit arising from an automobile accident involving their insured, Dr. Barry Root, while he was driving a rental car. We affirm.

Dr. Root purchased the supplemental insurance offered by DTG Operations, Inc. (Dollar) at a car rental counter in Las Vegas, Nevada. The supplemental insurance had two parts: Dollar's primary self-insurance (the Primary Protection), and Lincoln's Supplemental Liability Insurance (the Lincoln SLI policy). The Primary Protection provided for insurance against third party personal injury claims up to Nevada's $15,000 statutory minimum. The Lincoln SLI policy provided for the same up to $1 million, less the Primary Protection.

2

Lincoln argues that as between a rental car driver's personal automobile insurance—here, GEICO—and a rental car agency's self insurance up to the state statutory minimum—here, the Primary Protection—the driver's personal automobile insurer bears the primary responsibility for covering losses. Lincoln claims that *Alamo Rent-A-Car, Inc. v. State Farm Mutual Automobile Insurance Co.*, 953 P.2d 1074 (Nev. 1998) supports its position.

Lincoln's argument fails. The court in *Alamo* ruled that "[a] rental agency offers primary insurance only when the renter agrees to purchase an *extra protection plan*." *Id.* at 1077. Because Dr. Root purchased an extra protection plan from the rental agency, that extra protection plan provides primary coverage for losses sustained by Dr. Root while he drove the rental car. Thus, as the district court held, as between the Dollar Primary Protection and GEICO, Dollar must pay first. Dollar accepted that outcome, paid the policy limit, and is not party to this appeal.

The gravamen of this appeal is whether GEICO or Lincoln pays next, since the Primary Protection is only $15,000 and the damages assessed against Dr. Root were $760,000. Lincoln argues that GEICO should pay next because its policy is a "primary type" policy whereas the Lincoln SLI policy is an "excess type" policy, and that all "primary type" policies must be exhausted before any "excess type"

3

policies become liable for a given loss—thus invoking the so-called "horizontal exhaustion rule." *See, e.g.*, *Cmty. Redev. Agency v. Aetna Cas. & Surety Co.*, 57 Cal. Rptr. 2d 755, 761 (Cal. App. 1996). However, even assuming this California rule would be embraced by Nevada courts, the horizontal exhaustion rule does not apply when the language of the relevant policies provides specific guidance on payment priority. "If an excess policy states that it is excess over a specifically described policy and will cover a claim when that specific primary policy is exhausted, such language is sufficiently clear to overcome the usual presumption that *all* primary coverage must be exhausted." *Id.* at 761 n.6. This is consistent with Nevada law, which directs us to examine the language of the policies to determine priority when there is no statutory scheme governing priority. *See Alamo*, 953 P.2d at 1075. We therefore turn to the policies.

The Lincoln SLI policy provides:

> We will pay on behalf of the "insured" [Dr. Root] the "ultimate net loss" in excess of the limit of liability or limit of insurance of all "underlying insurance" available to the "insured" because of "bodily injury" or "property damage" to which this insurance applies . . . .

"Underlying insurance" means "insurance listed in ITEM 4." Item 4 states, "[l]imits required under any State Financial Responsibility Limits or Mandatory Insurance Law or other available insurance, which ever is higher."

4

According to Lincoln, "other available insurance" includes the renter's own auto insurance. Such a construction cannot be correct. The Lincoln SLI policy is not a contract between Lincoln and Dr. Root; it is a contract between Lincoln and *Dollar*. Elsewhere in the Lincoln SLI policy, it states: "'underlying insurance' shall be maintained in full effect by <u>you</u> during the term of the policy." "[Y]ou" refers to Dollar. Thus, the plain meaning of the Lincoln SLI "excess type" policy is that it is expressly excess to the primary insurance secured by Dollar, not that maintained by the renter. On the other hand, the GEICO "primary type" policy states that it is *excess* as to *non-owned* (rented) autos. Accordingly, regardless of the policies' general self-classifications as "primary" or "excess," the language of the policies establishes that the order of priority for the particular loss in this case must be first Dollar, second Lincoln, and third GEICO.

We note that any other ruling would lead to an unconscionable result. Lincoln contracted with Dollar to sell insurance to rental car drivers. If Lincoln has no liability until after a renter's personal insurance is exhausted, Lincoln's SLI policy offers only an illusory benefit, and is potentially putting its contracting partner, Dollar, at risk of liability for misrepresentation. In light of such considerations, and the general rules of insurance contract interpretation, we decline to accept Lincoln's interpretation of its policy. *See Fed. Ins. Co. v. Am.*

*Hardware Mut. Ins. Co.*, 184 P.3d 390, 392 (Nev. 2008) (stating Nevada public policy in favor of construing insurance policies narrowly against the insurer and in favor of coverage); *Nat'l Union Fire Ins. Co. of Pa. v. Reno's Executive Air, Inc.*, 682 P.2d 1380, 1383 (Nev. 1984) ("When ambiguity in the language of a policy exists, the court should consider not merely the language, but also the intent of the parties, the subject matter of the policy, and the circumstances surrounding its issuance.").

We therefore find that once the Primary Protection was exhausted, Lincoln became liable for the loss up to the limits of its policy. Since the limits of Lincoln's policy are not exhausted in this case, there is no need to determine the relative liabilities of GEICO and Vigilant. Lincoln must reimburse GEICO and Vigilant each $250,000.

**AFFIRMED.**