Hillsborough
No. 90-243

## GERALD C. DIONNE AND GERALDINE T. DIONNE

v.

## CITY OF MANCHESTER

May 3, 1991

*Donald M. Redden*, of Derry, by brief and orally, for the plaintiffs.

*McDonough & O'Shaughnessy P.A.*, of Manchester (*Robert G. Whaland* on the brief and orally), for the defendant.

JOHNSON, J. The issue in this declaratory judgment action is whether a municipality which does not insure its motor vehicles must provide uninsured motorist coverage for its employees, pursuant to RSA 264:15 (1982) (current version at RSA 264:15 (Supp. 1990)). The Superior Court (*Murphy*, J.) answered this question in the affirmative, but limited coverage to $150,000, pursuant to RSA 507-B:4 (Supp. 1990). The defendant, the City of Manchester (the City), ap-

peals the portion of the court's decision requiring it to provide coverage, while the plaintiffs, Gerald C. Dionne and Geraldine T. Dionne (the Dionnes), appeal the $150,000 limitation. For the reasons stated below, we reverse the superior court's decision that coverage is required.

The pertinent facts of this case are as follows. The City does not insure its motor vehicles. The City does not purchase insurance from an insurance carrier, but instead, in the words of the City's Risk Manager, it has made the decision to "manage[ ], adjust[ ] and pay[ ] its own claims." A portion of its budget each year is earmarked for payment of claims.

While employed by the City, Gerald Dionne was injured on April 11, 1987, when the city-owned automobile he was driving was struck by another car. The other car was insured for less than the amount of Gerald Dionne's claimed injuries. The Dionnes requested arbitration on the issue of uninsured motorist coverage, and then brought this declaratory judgment action against the City in an effort to compel such coverage.

The declaratory judgment petition was followed by a motion for summary judgment, in which the Dionnes argued that, as a matter of law, the City must provide uninsured motorist coverage. The City then filed a motion for summary judgment, arguing that (1) it was a "self-insurer," and thus not required by RSA 264:15 to provide uninsured motorist coverage; (2) the Dionnes' suit is barred because of the City's municipal immunity, as described in RSA 264:33; and (3) the Dionnes' suit is barred by the workers' compensation statute, *see* RSA 281:12.

The superior court first held that, although the City is required to provide uninsured motorist coverage, coverage is limited to the statutory minimum of automobile liability insurance, in this case $50,000. Because the car which struck Gerald Dionne's car was insured for this amount, the superior court held that no further uninsured motorist coverage was required of the City. However, upon the Dionnes' motion for reconsideration, the superior court altered the latter part of its decision and held that coverage in this case is limited to $150,000, pursuant to RSA 507-B:4 (Supp. 1990) (limiting liability of a governmental unit to $150,000 sustained by any one person).

Both the City and the Dionnes appeal the superior court's ruling, making essentially the same arguments they made in their motions for summary judgment. In addition, the Dionnes argue that the City should be estopped from denying uninsured motorist coverage be-

cause it held itself out as carrying automobile liability insurance. Although the Dionnes claim they raised this issue in their motion for reconsideration, they declined to provide us with a copy of this pleading. As we have no evidence the estoppel argument was raised below, we do not address it on appeal. *See Dombrowski v. Dombrowski*, 131 N.H. 654, 662, 559 A.2d 828, 833 (1989).

Our disposition of this case requires interpretation of RSA 264:15, I (1982), applicable at the time of this accident, which provided, in pertinent part:

> "No policy shall be issued or delivered in this state, under the provisions of RSA 264:14, with respect to a vehicle registered in this state unless coverage is provided therein or supplemental thereto at least in amounts or limits prescribed for bodily injury or death for a liability policy under this chapter, for the protection of persons insured thereunder who are legally entitled to recover damages from owners or drivers of uninsured motor vehicles, and hit-and-run vehicles because of bodily injury, sickness or disease, including death resulting therefrom. . . ."

"'[T]his court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole.'" *Appeal of Manchester Bd. of School Comm.*, 129 N.H. 151, 152, 523 A.2d 114, 115 (1987) (citation omitted). In performing the role of arbiter, we are bound by the rule of statutory construction which states that "legislative intent is to be found not in what the legislature might have intended, but rather, in the meaning of what it did say." *Psychiatric Inst. of America v. Mediplex*, 130 N.H. 125, 128, 536 A.2d 169, 171 (1987). Thus, "[i]n any case involving the interpretation of a statute, the starting point must be the language of the statute itself." *State Employees' Ass'n of N.H. v. Bd. of Trustees*, 120 N.H. 272, 273, 415 A.2d 665, 666 (1980).

Both parties focus on the words "[n]o policy shall be issued or delivered . . . unless" in RSA 264:15, I, in arguing their case. The City contends that, because it had not purchased automobile liability insurance from an insurance carrier during the time in question, no "policy" was *issued or delivered* and thus the requirements of RSA 264:15, I, are inapplicable. The Dionnes, on the other hand, reject a narrow reading of the statute. Since the City in its pleadings calls itself a "self-insurer," the Dionnes argue the City acts as its own insurance carrier, and thus should be required to provide uninsured motorist coverage for those of its employees who operate City vehi-

cles as part of their jobs. The Dionnes contend that a broad reading of the statute is justified in light of the statute's remedial, protective purpose. We disagree.

██ ˙ It is axiomatic that the words of a statute should not be read in isolation, and that instead all parts of a statutory act must be construed together. *Hall v. Brusseau*, 100 N.H. 87, 89, 119 A.2d 703, 704 (1956). Moreover, "[i]t is a basic precept of statutory construction that the definition of a term in a statute controls its meaning." *Appeal of Rehab. Assoc's of N.E.*, 131 N.H. 560, 565, 556 A.2d 1183, 1186 (1989). The first line of RSA 264:15, I, reads, "No policy shall be issued or delivered in this state, *under the provisions of RSA 264:14* [unless uninsured motorist coverage is provided]." (Emphasis added.) An examination of RSA 264:14, I (current version at RSA 264:14, I (Supp. 1990)) is thus required. That statute provides, in pertinent part:

> "No *motor vehicle liability policy, as defined in RSA 259:61*, shall be issued or delivered in the state, until a copy of the form of the policy has been on file with the insurance commissioner for at least 30 days . . . . The insurance commissioner shall approve a form of policy which contains the name and address of the insured, a description of the vehicles covered, the premium charges therefor, the policy period, the limits of liability as between the insured and the insurance company, and an agreement that insurance is provided in accordance with and subject to the provisions of this chapter. . . ."

(Emphasis added.) RSA 259:61, I, in turn, defines "motor vehicle liability policy" as "a policy of liability insurance which provides . . . [i]ndemnity for or protection to the insured and any person responsible to him for the operation of the insured's motor vehicle . . . ." The statute also provides minimum levels of indemnification for each such policy issued.

██ The plaintiffs' contention that the City's decision to be "self-insured" meets these definitional requirements is without merit. The City has no motor vehicle liability policy, as described in RSA 264:14 and RSA 259:61, I; it is uninsured. The City has not formed a contract with an insurance company to indemnify its drivers, but instead simply accepts the risk of accident and pays damage claims when required to do so. Therefore, the provisions of RSA 264:15, I, are inapplicable to this case. *Cf. U.S. Automobile Assoc. v. Wilkinson,*

132 N.H. 439, 446–49, 569 A.2d 749, 753–55 (1989) (umbrella-type insurance policy held not a "motor vehicle liability policy" for purposes of RSA 264:15).

The Dionnes cite several cases involving "self-insurers" from other jurisdictions in support of their argument that the City should provide them with uninsured motorist coverage. Representative of these cases are *Christy v. City of Newark*, 102 N.J. 598, 510 A.2d 22 (1986); *Country-Wide Ins. Co. v. Manning*, 62 N.Y.2d 748, 476 N.Y.S.2d 831, 465 N.E.2d 370 (1984); and *Modesta v. Southeastern Pennsylvania Transp. Authority*, 469 A.2d 1019 (Pa. 1983). However, the statutory schemes upon which these cases are based bear little resemblance to our own, and thus they are irrelevant here. For example, motor vehicle liability insurance is mandatory in New Jersey and New York, with few exceptions. *See* N.J. STAT. ANN. § 39:6A-3 (West 1990); N.Y. VEH. & TRAF. LAW § 312 (McKinney Supp. 1991). And in Pennsylvania, certain entities wishing to be "self-insured," such as a transportation authority, must comply with a set of statutory rules designed to ensure financial responsibility. See *Modesta v. Southeastern Pennsylvania Transp. Authority, supra* at 1022.

The statutory scheme in this State differs dramatically from those described above. First, New Hampshire does not require proof of financial responsibility as a prerequisite to operating a motor vehicle registered in this State, unless the owner or operator has been convicted of certain traffic-related crimes or has caused an accident. *See* RSA 264:2, :3 (Supp. 1990). The requirements of RSA 259:61, 264:14, and 264:15 may be avoided simply by choosing not to purchase an insurance policy. Second, the status of being uninsured is virtually unregulated in New Hampshire. *See* RSA 264:2, :3 (Supp. 1990). In other words, one choosing not to purchase a traditional insurance policy need not ordinarily deposit a bond with the insurance commissioner, file a certificate of self-insurance, or otherwise prove financial responsibility. *Id.* No exceptions are made for governmental units. All persons, corporate entities, *and* governmental units thus have almost complete freedom to decide whether to be insured or uninsured in the State of New Hampshire. If this state of affairs is to be modified, the decision is for the legislature, not for the judiciary.

The legislative policy in other jurisdictions is apparently to require and regulate proof of financial responsibility of almost everyone. In these highly regulated jurisdictions, the word "policy" in an uninsured motorist protective statute can be interpreted to require coverage from a "self-insurer." *See Christy v. City of Newark supra;*

*Country-Wide Ins. Co. v. Manning supra; Modesta v. Southeastern Pennsylvania Transp. Authority supra.* Such is not the case in New Hampshire. Because our holding on this issue is dispositive of this case, we decline to address the parties' other arguments.

*Reversed.*

All concurred.