Cathleen McSORLEY, Appellant,

v.

The HERTZ CORPORATION, Appellee.

No. 79695.

Supreme Court of Oklahoma.

Nov. 1, 1994.

As Corrected Nov. 8, 1994.

Rehearing Denied Dec. 13, 1994.

Rex K. Travis, Margaret E. Travis, Oklahoma City, for appellant.

Don M. Vaught, John R. Denneny, Oklahoma City, for appellee.

Robin L. Dill, Gerard F. Pignato, Oklahoma City, for amicus curiae, Budget Rent–A–Car, Inc.

KAUGER, Justice:

The first impression question presented is whether the trial court erred in granting summary judgment to a self-insured car rental company which did not offer uninsured/underinsured motorist coverage [1] pursuant to its rental agreement. Under the facts presented here, we find that a self-insured car rental company is not required to offer uninsured motorist coverage to a car renter and that uninsured motorist coverage did not arise by operation of law. Summary judgment was proper.

## FACTS

■ Cathleen McSorley (McSorley/car renter), a Maryland resident, rented a car from the Hertz Corporation (Hertz/self-insurer) at the Tulsa International Airport on July 17, 1987. The face of the rental agreement provided three options for the car renter: 1) collision damage waiver; 2) personal accident insurance; and 3) personal effects coverage.[2] On the rental agreement, McSorley wrote "no," and initialed the appropriate space, declining any coverage described in the rental agreement.[3] On July 20, 1987, she was involved in an automobile accident in

1. Uninsured/underinsured motorist coverage is an agreement to indemnify the insured for injuries caused by another—who is uninsured or underinsured—based on a showing that the other motorist was guilty of negligence resulting in injury to the insured. The rights of the parties depend on the statute which was in effect at the time the policy was issued or was last renewed prior to the accident. *Uptegraft v. Home Ins. Co.*, 662 P.2d 681, 684–85 (Okla.1983). McSorley rented the automobile in 1987. All references will be to the 1981 versions of the statutes, unless amendments were made prior to 1987. Title 36 O.S.1981 § 3636(C) provides in pertinent part:

   " ... (C) For the purposes of this coverage the term 'uninsured motor vehicle' shall include an insured motor vehicle where the liability insurer thereof is unable to make payment ... because of insolvency.... [T]he term ... shall also include an insured motor vehicle, the liability limits of which are less than the amounts of the claim of the person or persons making such claim ... "

   The current version of this subsection remains unchanged. Because uninsured motor vehicle is defined to include underinsured motor vehicles, further references will only be to the term uninsured motorist coverage.

2. According to the rental agreement, the car renter is apparently responsible for loss or damage to the car. If a renter accepts and pays a fee for the collision damage waiver, Hertz would—under certain circumstances—waive the renter's responsibility to pay for damages. The agreement does not include a description of what personal accident insurance or personal effects insurance would cover in the event it is purchased by a car renter. The agreement states that a copy of the summary of coverage limits is furnished at the rental office; however, the copy of the summary coverage was not made part of the record.

3. Although not entirely legible, there is language on the back of the rental agreement which appears to contain a provision in which the rental company may have agreed to provide some type of liability coverage. It also apparently expressly excludes uninsured motorist coverage and provides that if such coverage is required by law, both the renter and Hertz reject it. Nothing in the record, including either parties' brief for summary judgment, reveals whether the effect of either of the provisions were made an issue before the lower courts. Furthermore, although McSorley argues generally that a rental company which provides liability coverage to a car renter must comply with uninsured motorists mandates, neither party directs our attention to the apparent language in the agreement nor argues its application or effect on the issue presented here. Consequently, the effect of either provision was never made an issue to be resolved by this Court. Because that portion of the agreement is not completely legible and the parties do not argue its application here, we do not address the possi-

Miami, Oklahoma, caused by the alleged negligence of a third-party, underinsured motorist.

On September 1, 1989, McSorley sued her insurance company in Maryland to recover uninsured motorist benefits.[4] The Maryland court stayed the action on May 20, 1991, until Oklahoma could determine the issue of primary liability for uninsured insurance coverage. On November 8, 1991, McSorley sued Hertz alleging that she was entitled to uninsured motorist coverage. Hertz moved for summary judgment arguing that as a self-insurer,[5] it was not required to offer uninsured motorist coverage in connection with a car rental agreement.

The trial court entered summary judgment for Hertz. McSorley appealed; and the Court of Appeals held that: 1) Hertz, as a self-insurer, was obligated to offer uninsured motorist protection to renters of its vehicles; and 2) in the absence of a written offer and an effective rejection, uninsured motorist coverage was in effect by operation of law. We granted certiorari on March 4, 1994, to address the question of first impression.

**UNDER THE FACTS PRESENTED HERE, A SELF–INSURED CAR RENTAL COMPANY IS NOT REQUIRED TO OFFER UNINSURED MOTORIST COVERAGE TO A CAR RENTER— UNINSURED MOTORIST COVERAGE DID NOT ARISE BY OPERATION OF LAW. SUMMARY JUDGMENT WAS PROPER.**

McSorley asserts that Hertz, as a self-insured car rental company, is under an obligation to offer uninsured motorist coverage to a car renter and because Hertz did not offer uninsured motorist coverage, it must

ble effects of either provision nor do we consider them in reaching our decision. Parties waive issues by failing to brief them. *American First Abstract v. Western Info. Syst.*, 735 P.2d 1187, 1189 (Okla.1987). We note, however, that some courts in other jurisdictions, relying on particular state laws and particular language in rental agreements, equate a self-insurer with a liability insurance carrier. Under some circumstances, the rental agency is required to provide uninsured motorist coverage. See e.g., *Van Vonno v. Hertz Corp.*, 120 Wash.2d 416, 841 P.2d 1244, 1250 (1992) (Relying on Oregon law, held that rental agreement required an offer of uninsured motorist coverage.); *Trobaugh v. Migliore*, 597 So.2d 494, 498 (La.App. 1 Cir.1992) (Through language in rental agreement uninsured motorist statute was made applicable to self-insurer car rental company.); *Jones v. King*, 549 So.2d 350, 351 (La.App. 2 Cir.1989) (When a self-insurer offers liability insurance on the rental vehicle, the company places itself in the position of a vehicle liability insurer and must give the renter an opportunity to accept or reject uninsured motorist coverage.); *Ashline v. Simon*, 466 So.2d 622, 624 (La. App. 5 Cir.1985); *Pollard v. Champion Ins. Co.*, 532 So.2d 838, 840 (La.App. 4 Cir.1988); *MacKenzie v. Avis Rent–A–Car Systems*, 369 So.2d 647, 650 (Fla. App.1979) (Although self-insurer had no statutory obligation to provide uninsured motorist coverage, the question remained as to whether the rental company contracted to furnish more than what was required by law including uninsured motorist coverage.). In other circumstances, a self-insurer was not required to offer uninsured motorist coverage. *Diversified Services, Inc. v. Avila*, 606 So.2d 364, 366 (Fla.1992) (Self-insured leasing company is not required to offer uninsured motorist cover-

age on leases less than one year.); *Robinson v. Hertz Corp.*, 140 Ill.App.3d 687, 95 Ill.Dec. 111, 113, 489 N.E.2d 332, 334 (1986) (Lease agreement did not create coverage for uninsured motorist liability.). *Delaney v. Agency Rent–A–Car, Inc.*, 616 So.2d 869, 871 (La.App. 3 Cir.1993) (Car rental company was not required to offer uninsured motorist coverage to a renter which agreed to provide automobile coverage through renter's own insurance.); *Morpurgo v. Greyhound Rent–A–Car, Inc.*, 339 So.2d 718, 719–20 (Fla.App. 1 Dist.1976) (Self-insurer not required under lease agreement to give notice of self-insured status or to provide uninsured motorist coverage.).

4. McSorley's petition in the Maryland suit alleges that the negligent third party motorist, which caused the accident, had limited liability coverage of $25,000.00. However, the cost of McSorley's injuries exceeded the third party's policy limits. At the time of the accident, McSorley was insured by Erie Indemnity Company. She attempted to recover underinsured motorist coverage from her own policy and was denied coverage. McSorley then sued her carrier alleging a breach of contract for failing to make available underinsured benefits pursuant to her policy.

5. Neither party disputes Hertz' status as a self-insurer. However, the record does not contain a copy of its certificate of self-insurance as described in title 47 O.S.1981 § 7–503, see note 16, infra. Instead, the record includes a security verification form issued to Hertz by the Financial Responsibility Division of the Department of Public Safety.

provide uninsured motorist protection to her. Hertz insists that: 1) its status as a self-insurer for purposes of financial responsibility laws does not also obligate it to offer or provide uninsured motorist coverage to a car renter; and 2) the uninsured motorist statute contemplates and requires the existence of a policy of insurance.

■ The determination of legislative intent controls statutory interpretation.[6] The intent is ascertained from the whole act based on its general purpose and objective.[7] In construing statutes, relevant provisions must be considered together whenever possible, to give full force and effect to each.[8] To ascertain legislative intent, we look to the language of the pertinent statutes.[9] Legislative silence, when the Legislature has authority to speak, may be considered as an indication of its intent not to occupy the field.[10]

Consequently, we must examine the liability and responsibility of self-insurers under Oklahoma's financial responsibility act and the intent of the Legislature as it relates to the application of uninsured motorist coverage to self-insurers.

Under Oklahoma's Financial Responsibility Act (the Act)[11] owners and operators of motor vehicles must maintain security for their automobiles. Section 7–601 of the Act requires that: 1) owners maintain security on their vehicle; and 2) operators of a vehicle not owned by them must maintain security on the vehicle they operate, unless the owner of the vehicle provides coverage for the operator.[12] The Act further provides for three types of security: 1) a policy or bond; 2) a deposit of cash or securities; and 3) self-insurance.[13] Any form of security cannot be less than the minimum amounts required by

6. *Smicklas v. Spitz*, 846 P.2d 362, 366 (Okla. 1992); *Clifton v. Clifton*, 801 P.2d 693, 696 (Okla.1990); *Fuller v. Odom*, 741 P.2d 449, 452 (Okla.1987).

7. *Oglesby v. Liberty Mut. Ins. Co.*, 832 P.2d 834, 839 (Okla.1992); *Smicklas v. Spitz*, see note 6 at 366, supra.

8. *Haney v. State*, 850 P.2d 1087, 1089 (Okla. 1993); *Public Service Co. of Oklahoma v. State ex rel. Corp. Com'n*, 842 P.2d 750, 752 (Okla.1992).

9. *Tate v. Browning–Ferris, Inc.*, 833 P.2d 1218, 1228 (Okla.1992); *State v. ex rel. Macy v. Freeman*, 814 P.2d 147, 153 (Okla.1991).

10. *Brigance v. Velvet Dove Restaurant, Inc.*, 725 P.2d 300, 303 (Okla.1986); *Owings v. Pool Well Service*, 843 P.2d 380, 383 (Okla.1992); *City of Duncan v. Bingham*, 394 P.2d 456, 460 (Okla. 1964).

11. Oklahoma's Financial Responsibility Act, title 47 O.S.1981 § 7–101 et seq., sets forth the requirements for financial responsibility of owners and operators of motor vehicles in Oklahoma. Article II and Article III of that chapter deal with the requirements of insuring the ability of a driver to respond to damages arising from a motor vehicle accident after the accident has occurred. In 1976, the Legislature enacted Article VI of that chapter, Compulsory Insurance. This law requires the maintenance of security against potential liability prior to the occurrence of any accident. The version of the compulsory insurance statute which applies to the present case, title 47 O.S.Supp.1982 § 7–601(B) provides in pertinent part:

"... (B) On and after January 1, 1983, every owner of a motor vehicle registered in this state, other than a licensed used motor vehicle dealer, shall, at all times, maintain in force with respect to such vehicle security for the payment of loss resulting from the liability imposed by law for bodily injury or death and property damage sustained by any person arising out of the ownership, maintenance, operation or use of the vehicle. Every person, while operating or using a motor vehicle registered in this state which is not owned by such person, shall maintain in force security for the payment of loss resulting from the liability imposed by law for bodily injury, death or property damage sustained by any person arising out of the operation or use of the vehicle, unless such security has been provided by the owner in accordance with this section which does not exclude said person from coverage...."

Section 7–601 was amended in 1993. The new statute requires on or after September 1, 1993, every vehicle operated in this state must maintain security. It also provides requirements and methods for which non-residents may comply with the statute's mandates.

12. Title 47 O.S.Supp.1982 § 7–601, see note 11, supra.

13. Title 47 O.S.Supp.1982 § 7–601(A) provides:

"... 'Security' means:
1. A policy or bond meeting the requirements of Section 7–204 of this title,
2. A deposit of cash or securities having the equivalency of limits required under Section 7–204 of this title as acceptable limits for a policy or bond, or

§ 7–204 of the Act.[14]

The purpose behind compulsory insurance is to mandate that vehicles operated on Oklahoma highways be secured against liability to innocent victims of the negligent operation or use of the insured vehicle.[15] Title 47 O.S. 1981 § 7–503[16] allows a person,[17] who has more than twenty-five vehicles registered in Oklahoma, to qualify as a self-insurer by obtaining a certificate of self-insurance by the Department of Public Safety. Hertz pro-

vides security for its vehicles through self-insurance.[18]

Section 3636 of the Oklahoma Insurance Code[19] relates to required uninsured motorist coverage in insurance policies. Title 36 O.S.1981 § 3636(A) mandates that all policies insuring against loss resulting from liability imposed by law arising out of ownership, maintenance, or use of a motor vehicle shall include coverage as described in subsection (B).[20] Subsection (B) of § 3636[21] provides that uninsured motorist coverage provided as

3. Self-insurance, pursuant to the provisions of Section 7–503 of this title, having the equivalency of limits required under Section 7–204 of this title as acceptable limits for a policy or bond."
Section 7–601(A) was amended in 1981, 1982, and in 1993; however, the amendments do not effect this case. Title 47 O.S.1981 § 7–204, see note 22, infra. Title 47 O.S.1981 § 7–503, see note 16, infra. We note that Article II and Article III of the Act deal with the requirements of ensuring the ability of an owner or operator to respond to damages arising from a motor vehicle after an accident has occurred. Exceptions to these requirements are found in title 47 O.S.1981 § 7–203 which includes a self-insurer or an operator of a vehicle for a self-insurer. However, in *Beavin v. State Ex Rel. Dept. of Public Saf.*, 662 P.2d 299, 302 (Okla.1983) we held that the provisions of § 7–203 do not apply to the compulsory insurance mandates of § 7–601.

14. Title 47 O.S.1981 § 7–204, see note 22, infra.

15. *Young v. Mid–Continent Cas. Co.*, 743 P.2d 1084, 1087 (Okla.1987).

16. Title 47 O.S.1981 § 7–503 provides in pertinent part:
"(a) Any person in whose name more than twenty-five vehicles are registered in this state may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the Department as provided in subsection (b) of this section.
(b) The Department may, in its discretion, upon the application of such a person, issue a certificate of self-insurance when it is satisfied that such person is possessed and will continue to be possessed of ability to pay judgment obtained against such person. Such certificate may be issued authorizing a person to act as a self-insurer for either property damage or bodily injury or both...."
The 1991 version of the statute remains unchanged.

17. Title 47 O.S.1981 § 1–144 defines a persons as every natural person, firm copartnership, association or corporation.

18. As a rental car agency, Hertz is also affected by Chapter 8 of the Oklahoma Highway Safety Code which provides two ways in which owners of for rental vehicles may provide financial security. *Woods v. Budget Rent–A–Car Systems, Inc.*, 825 P.2d 1350, 1352 (Okla.1992). Section 8–101 requires liability insurance meeting specific liability amounts to be purchased by the owner or by the lessee as long as the later has entered into a binding and valid lease and accepts responsibility imposed by law. If an insurance policy exists, the negligence of a person operating the rental vehicle will not be imputed to the rental agency absent proof of an agency relationship. Section 8–102 provides an alternative method of complying with financial responsibility requirements by demonstrating to the Tax Commission that the owner has the ability to respond to damages. If proof of financial responsibility is provided under § 8–102, a self-insured rental company is jointly and severally liable for damages caused by the negligent operation of the vehicle. *Moyer Car Rental, Inc. v. Halliburton Co.*, 610 P.2d 232, 236 (Okla.1980); Title 47 O.S.1981 § 8–101; Title 47 O.S.1981 § 8–102.

19. Title 36 O.S.1981 § 101 et seq.

20. Title 36 O.S.1981 § 3636(A) provides:
"No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be issued, delivered, renewed, or extended in this state with respect to a motor vehicle registered or principally garaged in this state unless the policy includes the coverage described in subsection (B) of this section."
The current version of this subsection remains unchanged.

21. Title 36 O.S.1981 § 3636(B) provides in pertinent part:
"B. The policy referred to in subsection (A) of this section shall provide coverage therein or supplemental thereto for the protection of persons insured thereunder who are legally entitled to recover damages.... Coverage shall be not less than the amounts or limits pre-

part of a liability policy shall not be less than that required under 47 O.S.1981 § 7–204,[22] with the insured having the option to purchase increased limits of liability not to exceed the limits provided for bodily injury liability under the policy.

■ Section 7–204 sets the minimum limits of liability coverage required to be carried by all owners of vehicles registered in the State of Oklahoma.[23] If an insured desires to reject the required uninsured motorist coverage, the rejection must be in writing.[24] The purpose of the uninsured motorist provision, when considered in connection with the requirement that it provide minimum standards of protection, is to place the insured in the same position as if the negligent uninsured motorist had complied with the Oklahoma laws concerning financial responsibility.[25]

■ The uninsured motorist statute clearly requires that a policy of insurance insuring against loss arising out of the ownership or use of a motor vehicle provided by an insurer be in existence in order to necessitate the offering of uninsured motorist coverage. While the statute speaks to policies and refers to insured and insurers, it does not expressly address whether a self-insured car rental company comes within the confines of the statute.

This Court first addressed the application of the uninsured motorist statute to car rental companies in *Moon v. Guarantee Ins. Co.,* 764 P.2d 1331 (Okla.1988). In *Moon,* a car rental agency purchased liability insurance from an insurance company. The rental agency attempted to reject uninsured motorist insurance from coverage under the policy's statutorily mandated provision. Subsequently, a lessee of a rental vehicle signed a rental agreement which included the purchase of insurance coverage. An additional fee was charged in consideration of acceptance of the insurance. The lessee was involved in an automobile accident caused by the negligence of an uninsured motorist. After the insurance company denied uninsured motorist coverage on the policy issued in the course of the rental transaction, the lessee sued.

We held that: 1) insurance companies issuing, delivering, renewing, or extending poli-

scribed for bodily injury or death for a policy meeting the requirements of Section 7–204 of Title 47, of the Oklahoma Statutes, as the same may be hereafter amended; provided, however, that increased limits of liability shall be offered and purchased if desired, not to exceed the limits provided in the policy of bodily injury liability of the insured. The uninsured motorist coverage shall be upon a form approved by the State Board for Property and Casualty Rates ..."

Title 36 O.S.1981 § 3636 was amended in 1989 and again in 1990. The current version requires that the form be approved by the Insurance Commissioner.

22. Title 47 O.S.1981 § 7–204 provides in pertinent part:

"(a) No policy or bond shall be effective ... unless issued by an insurance company or surety company authorized to do business in this state, except as provided in subdivision (b) of this section, nor unless such policy or bond is subject, if the accident has resulted in bodily injury or death, to a limit, exclusive of interest and costs, of not less than Ten Thousand Dollars ($10,000.00) because of bodily injury to or death of one person in any one accident and, subject to said limit for one person, to a limit of not less than Twenty Thousand Dollars

($20,000.00) because of bodily injury to or death of two or more persons in any one accident, and if the accident has resulted in injury to or destruction of property to a limit of not less than Ten Thousand Dollars ($10,-000.00) because of injury to or destruction of property of others in any one accident."

The 1991 version remains unchanged.

23. *Id.*

24. Title 36 O.S.1981 § 3636(F) provides:

"(F) The named insured shall have the right to reject such uninsured motorist coverage in writing, and except that unless the named insured requests such coverage in writing, such coverage need not be provided in or supplemental to a renewal policy in connection with a policy previously issued to him by the same insurer."

Section 3636 was amended in 1989 and 1990. The new version, provides the form in which uninsured motorist coverage must be offered and approved by the Insurance Commissioner.

25. *Moser v. Liberty Mut. Ins. Co.,* 731 P.2d 406, 408 (Okla.1986).

cies are required to also offer by written provision uninsured motorist coverage, unless it is waived by a written rejection by the named insured;[26] 2) the named insured, within the context of the uninsured motorist statute, applies to persons named as insured in a vehicle rental/insurance contract; 3) a car rental agency acts as an agent of the insurance company when it solicits fees and sells insurance on behalf of an insurer; and 4) the car rental agent can not preempt the decision of a prospective purchaser of whether to reject uninsured motorist coverage. Accordingly, in *Moon,* uninsured motorist coverage arose by operation of law.

However, *Moon* is not dispositive of the present case. In *Moon,* the rental company was required to offer uninsured motorist coverage because it was selling insurance as an insurance agent through an insurance company. The car renter purchased a policy of insurance; therefore, a policy existed to which uninsured motorist coverage could attach. Here, the car rental company self insures, and McSorley did not purchase a policy of insurance.[27] Where no policy exists, uninsured motorist coverage does not arise by operation of law.

McSorley contends that because a certificate of self-insurance is allowed as a substi-

tute for a liability insurance policy, Hertz should not be excluded from complying with the requirements of the uninsured motorist statute. The car renter relies on decisions from other jurisdictions in support of her proposition that a self-insured must offer uninsured motorist coverage.

For instance, in *Allstate Ins. Co. v. Shaw,* 52 N.Y.2d 818, 418 N.E.2d 388, 436 N.Y.S.2d 873 (1980), the court interpreted a statute which by its express provisions required vehicles transporting passengers for hire to insure their vehicles by either a bond or policy of insurance, including uninsured motorist coverage. The same statute further held rental companies subject to the same provisions in the same manner and the same extent, but allowed self-insurance. The court, construing that statute, determined that self-insurers were required to provide uninsured motorist coverage as well.

We find that the car renter may not rely on these cases because they are distinguishable on their facts. Furthermore, these decisions, to a great extent, are based upon an examination of particular legislative provisions governing the content of automobile insurance contracts which differ from Oklahoma's statutory scheme.[28]

In our view, there is a lack of legislative intent to require self-insureds to offer unin-

---

26. The sole exception from the requirement of a written rejection applies only to renewals of policies where the named insured has already supplied the insurer with a written rejection of uninsured motorist coverage pursuant of a previous policy. Title 36 O.S.1981 § 3636, see note 24, supra.

27. Insurance is a contract and the relationship between the insured and an insurer is contractual in nature. *Silver v. Slusher,* 770 P.2d 878, 883 (Okla.1988), *cert. denied,* 493 U.S. 817, 110 S.Ct. 70, 107 L.Ed.2d 37 (1989). Self-insurance, on the otherhand, is the assumption of risk of loss by one having an insurable interest. *United States v. Newton Livestock Action Market,* 336 F.2d 673, 676–77 (10th Cir.1964). A self-insurer is not technically an insurer, but it actually provides a substitute for an insurance policy.

28. McSorley contends that *Twyman v. Robinson,* 255 Ga. 711, 342 S.E.2d 313, 315 (1986); *Morpurgo v. Greyhound Rent–A–Car,* supra note 3 at 719–720; *Jones v. King,* supra note 3, at 351; *Hartford Ins. Co. v. Hertz Corp.,* 410 Mass. 279,

572 N.E.2d 1 (1991) support a finding that self-insured car rental companies must offer uninsured motorist coverage. However, these cases are distinguishable. These courts, relying in part on public policy, extended uninsured motorist coverage to self-insurers even in the absence of express statutory language compelling such a result. In *Hartford,* the court was faced with a mandatory uninsured motorist statute which required all liability insurance policies to provide uninsured motorist protection and did not allow an insured to reject the coverage. The Massachusetts Supreme Court, recognizing that uninsured motorist coverage was compulsory, rather than optional, found that the term policy when used in the uninsured motorist statutes referred to broader notions of insurance coverage than motor vehicle liability policies. The court held that a self-insured rental company insured by a motor vehicle liability bond must also maintain uninsured motorist coverage. In *Robinson,* the court interpreted statutes which, although they allowed an insured to reject uninsured motorist coverage, self-insurers were governed by the Commissioner of Insurance. The Court held a plan of self-insurance also required uninsured

sured motorist coverage. A self-insurer is allowed to comply with compulsory insurance laws by agreeing to pay the equivalency of the minimum amount required to be carried by all owners of vehicles registered in Oklahoma.[29] However, the Legislature, in providing the manner in which a certificate of self-insurance is obtained, and in setting the minimum amount required for a self-insurer to comply with compulsory insurance laws did not expressly require self-insurers to secure uninsured motorist coverage.[30]

The fact that a self-insurer is financially responsible for its own vehicles or their oper-

coverage unless the self-insurer informed the public through the commissioner that it would deny coverage. *Morpurgo* and *Jones* are distinguishable on their facts because they involve interpretations of particular provisions in lease agreements, see discussion note 3, supra.

29. Title 47 O.S.1981 § 7–503, see note 16, supra.

30. In title 47 O.S.1981 § 7–503, see note 16, supra, the Oklahoma Legislature did not include uninsured motorist coverage. Other states, in setting out the requirements for self-insurers specifically include uninsured motorist coverage. See e.g., O.R.S. 806.130(3) (Provides that a self-insurer must agree to pay the same amounts that an insurer would pay under a motor vehicle policy, including uninsured motorist coverage.); see also, 75 Pa.C.S.A. § 1787(a)(3) (Self-insurer must provide uninsured motorist coverage.); Va. Code § 46.2–368(B)(ii) (Certificate may be issued when it provides for the protection of uninsured motorist coverage.).

31. Although decisions of other states are of limited value because they are based largely on the language of particular statutes or contracts involved, it is noteworthy that a majority of states have found uninsured motorist statutes inapplicable to self-insurers. *Mountain States, Etc. v. Aetna Cas. & Sur. Co.*, 116 Ariz. 225, 568 P.2d 1123, 1124–25 (1977) (Self-insured employer is not required to provide uninsured motorist coverage to employee's injured in automobile accident because: 1) the uninsured motorist statute does not require or intimate application to self-insured; 2) a self-insurer does not issue a policy of insurance; and 3) a self-insurer cannot be regarded as an insurance carrier.); *White by Scott v. Regional Transp. Dist.*, 735 P.2d 218, 219 (Colo.App.1987) (Bus passenger is not entitled to uninsured coverage from self-insurer because certificate of self-insurance is not an insurance policy.); *O'Sullivan v. Salvation Army*, 85 Cal. App.3d 58, 147 Cal.Rptr. 729, 731–732 (2 Dist. 1978) (Self-insured charitable organization was

ators does not transform it into an insurer as contemplated by the insurance code. By referring to the deliverance, issuance, and purchase of policies and coverage, it is evident that the uninsured statutory provision does not apply to self-insurers. The Legislature has not expressed its intent to require self-insurers to offer uninsured motorist coverage, and we may not do so by judicial caveat. The Insurance Code specifically regulates insurance carriers and insurance agents, but not self-insurers. This legislative omission is evidence of intent not to require self-insurers to offer uninsured motorist coverage.[31] Had the Legislature intended self-insurers to of-

not obligated to provide uninsured motorist coverage to an injured passenger because uninsured motorist statute refers to insurance carriers without reference to self-insurers.); *Lipof v. Florida Power and Light Co.*, 596 So.2d 1005, 1007 (Fla. 1992) (Self-insurer is not an insurance company and not subject to uninsured motorist statute.); *City of Gary v. Allstate Ins. Co.*, 612 N.E.2d 115, 118–119 (Ind.1993) (City was not required to provide uninsured motorist coverage to police officer injured by an uninsured motorist because self-insurance is not insurance. Uninsured motorist statute applies only to insurers who issue or deliver a "liability policy of insurance." Legislature did not expressly include self-insurers within the uninsured motorist act.); *Hill v. Catholic Charities*, 118 Ill.App.3d 488, 74 Ill.Dec. 153, 155–56, 455 N.E.2d 183, 185–86 (1 Dist.1983) (Passengers of self-insured vehicle were not entitled to uninsured motorist coverage because no policy of insurance is involved with self-insurance.); *Harrison v. Petri*, 468 So.2d 666, 667 (La.App. 4 Cir.1985) (Self-insured bus company is not required to provide uninsured motorist coverage to employees.); *Jordan v. Honea*, 407 So.2d 503, 505–06 (La.App. 1 Cir.1981) (Although superseded by statute, held self-insurers are not required to comply with uninsured motorist statutes because no insurance policy is issued or delivered.); *Coltey v. New England Tel. and Tel. Co.*, 135 N.H. 223, 600 A.2d 940, 942 (1991) (Self-insured employer was not required to provide uninsured motorist coverage to its employee because self-insurer has no motor vehicle liability policy therefore uninsured motorist statute is inapplicable.); *Dionne v. City of Manchester*, 134 N.H. 225, 589 A.2d 1016, 1018–20 (1991) (Self-insured municipality not required to provide uninsured motorist coverage to its employees.); *Grange Mut. Cas. Co. v. Refiners Transport and Terminal Corp.*, 21 Ohio St.3d 47, 487 N.E.2d 310, 314 (1986) (Uninsured motorist provisions do not apply to either self-insurers or surety bonds. Uninsured motorist statutes do not encompass self-insurers and any change in the law must come from the legislature.); *Ellis v. Rhode Island Public Transit Auth.*, 586 A.2d

fer uninsured motorist coverage it could have done so.

■ Our past pronouncement in *Moser v. Liberty Mutual Ins. Co.*, 731 P.2d 406, 409 (Okla.1986) also supports a finding that a self-insured car rental company is not required to offer uninsured motorist coverage. In *Moser* we held that the uninsured motorist provision applied to all automobile liability insurance policies or motor vehicle liability policies as defined in title 47 O.S.1981 § 7–324, which are primary policies insuring against liability arising out of the ownership, maintenance or use of a motor vehicle. Title 47 O.S.1981 § 7–324 provides in pertinent part:

"... A. 'motor vehicle liability policy' as the term is used in this title shall mean an 'owner's policy' or an 'operators' policy of liability insurance, certified as provided in Section 7–321 or Section 7–322 of this title as proof of financial responsibility for the

future, and issued, except as otherwise provided in Section 7–322 of this title, **by an insurance carrier duly authorized to transact business in this state,** to or for the benefit of the person named therein as insured." (Emphasis provided.)

Although the insurance code broadly defines insurance,[32] insurers [33] and policies,[34] Hertz is not an insurance carrier authorized to transact business in this State nor is it engaged in the business of selling policies of insurance. Accordingly, we find that a self-insured car rental company is not required to offer uninsured motorist coverage to a car renter—under the facts presented—uninsured motorist coverage did not arise by operation of law. Summary judgment was proper.

## CONCLUSION

We recognize that there may be strong policy reasons for requiring self-insured au-

1055, 1058 (R.I.1991) (Self-insurer bus service was not required to provide uninsured motorist coverage to its passengers because uninsured motorist statute applies to liability insurance policies issued by insurance companies and not to self-insurers.); *American States Ins. Co. v. Utah Transit Auth.*, 699 P.2d 1210, 1212–13 (Utah 1985) (Bus passenger was not entitled to recover uninsured motorist coverage because statutory language explicitly addresses rights and duties of two parties, insurer and insured under a contract of insurance. To apply to a self-insurer would contort its clear and express meaning.); *Shelton v. American Re–Insurance Company*, 210 Va. 655, 173 S.E.2d 820, 822–23 (1970) (Although superseded by statute, held self-insurer was excluded from uninsured motorist statute.). A few jurisdictions rejected the reasoning of the above cases and found that self-insureds are required to comply with uninsured motorist statutes. These decisions are generally based on public policy or the fact that the particular state required all motor vehicle policies must include uninsured motorist coverage. *Twyman v. Robinson*, see note 28, 342 S.E.2d at 315, supra; *Hartford Ins. Co. v. Hertz Corp.*, see note 28, 572 N.E.2d at 4–5, supra (Self-insured rental company required to provide uninsured motorist coverage to its customers.); *Heavens v. Laclede Gas Co.*, 755 S.W.2d 331, 333 (Mo.App.1988) (Self-insured employer was required to provide uninsured motorist coverage to employee because a self-insurer agrees to pay as if it had a vehicle liability policy and any policy would have included uninsured motorist coverage.); *Christy v. City of New-*

*ark*, 102 N.J. 598, 510 A.2d 22, 28 (1986) (Although superseded by statute, self-insured city was obligated to provide uninsured motorist coverage for police car.); *Allstate Ins. Co. v. Shaw*, 52 N.Y.2d 818, 436 N.Y.S.2d 873, 418 N.E.2d 388–89, 390 (1980) (Self-insurer is the same as "vehicle for hire" under statute requiring uninsured motorist coverage with surety bond or liability insurance.); *Modesta v. Southeastern Pennsylvania Transport. Auth.*, 503 Pa. 437, 469 A.2d 1019, 1024 (1983) (Bus passenger is entitled to self-insurance because self insurance is equivalent to a liability insurance policy under the mandatory no fault act requiring provision of uninsured motorist coverage.) *Wright v. Smallwood*, 308 S.C. 471, 419 S.E.2d 219, 221 (1992) (City required to provide uninsured motorist coverage for its employees.). See generally, Annot. "Applicability of Uninsured Motorist Statute to Self-insurers," 27 A.L.R.4th 1266 (1984).

**32.** Title 36 O.S.1981 § 102 defines insurance as a contract whereby one undertakes to indemnify another or pay a specified amount upon determinable contingencies.

**33.** Title 36 O.S.1981 § 103 defines insurer as every person engaged in the business of making contracts of insurance or indemnity.

**34.** Title 36 O.S.1981 § 3602 defines a policy as a contract or agreement for effecting insurance, or the certificate thereof.

tomobile rental companies to provide uninsured motorist coverage. However, such a decision must come from the Legislature. This Court does not sit as a council of revision, empowered to rewrite legislation in accord with its own conception of prudent public policy.[35] While, the financial responsibility laws and uninsured motorist statutes constitute a broad and comprehensive scheme to protect citizens from negligence and financial irresponsibility of drivers, the Legislature did not require that self-insurers secure against uninsured motorist coverage. Furthermore, the Legislature through the Oklahoma Insurance Code regulates insurance carriers and insures, but not self-insurers.

Although we recognize that the purpose of the uninsured motorist statute is to place an insured in the same position as if a negligent uninsured motorist had complied with compulsory insurance laws, the uninsured motorist statute contemplates the purchase of a policy of insurance from an insurance carrier or its agent. This Court may not, through the use of statutory construction, change, modify or amend the expressed intent of the Legislature.[36] Under the facts before us, no policy of insurance was purchased. Summary judgment was proper.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS OPINION VACATED; TRIAL COURT AFFIRMED.**

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE, OPALA, SUMMERS and WATT, JJ., concur.

ALMA WILSON, dissents.

**35.** *United States v. Rutherford,* 442 U.S. 544, 555, 99 S.Ct. 2470, 2477, 61 L.Ed.2d 68, 78 (1979).

**36.** *Copeland v. Stone,* 842 P.2d 754, 756 (Okla. 1992).

**1.** An examination of the rental contract provision seems to show an intention by Hertz to provide liability coverage for the vehicle and the operator. Although the quality of the copy provided to the Court is poor, the provision appears to provide: "10. *LIABILITY PROTECTIONS.* (a) Within the limits stated herein, Hertz will indemnify, hold harmless, and defend You and any Authorized Operators FROM AND AGAINST LIABILITY TO THIRD PARTIES, EXCLUDING ANY OF YOUR OR ANY AUTHORIZED OPERA-

ALMA WILSON, Justice, dissenting:

I would agree that a self-insurer is not required to offer uninsured motorist coverage to a permissive user of its vehicles. This is not the issue that the parties have succeeded in having the Court address. The Court has addressed whether a self-insured rental company is required to offer uninsured motorist coverage to one of its customers. But the Court has not even established that the customer has obtained liability coverage through the rental company. Therefore, today's opinion addresses an issue that is not properly framed within the record presented on appeal. This Court has issued a merely advisory opinion.

The majority opinion lists three coverages that the appellant rejected: 1) collision damage waiver; 2) personal accident insurance; and 3) personal effects coverage. The opinion then observes that the appellant declined all three coverages described in the rental agreement. In a footnote, the Court notes that there is language in the rental contract that may have resulted in the appellee's agreeing to provide liability coverage to the appellant. But because the effect of this clause was not argued by either party, the opinion notes that it does not address the possible effects of the provision. I must conclude that the Court is treating the facts as though the appellant rejected all coverage.[1]

If the Court finds that the appellant was not covered by a liability provision, then no uninsured motorist coverage need be offered

TORS FAMILY MEMBERS RELATED BY BLOOD, MARRIAGE OR ADOPTION RESIDING WITH YOU OR THEM. For bodily injury the limits of this protection limits are $100,000 for each person, $300,000 for each accident, and for property damage $25,000 for each accident, which accident results from the use of the car as protected by this agreement. The higher limit under LIS will be provided only if You accept LIS. This protection shall conform to the basic requirements of any applicable "No Fault" [illegible] BUT DOES NOT INCLUDE "UNINSURED MOTORIST," "UNDER-INSURED MOTORIST," SUPPLEMENTARY "NO FAULT" OR ANY OTHER OPTIONAL PROTECTION. TO THE EXTENT PERMITTED BY LAW, HERTZ AND YOU HEREBY REJECT THE INCLUSION

because, pursuant to title 36, § 3636, such coverage is based upon liability coverage. Not even an insurance carrier is obligated to offer uninsured motorist coverage to a *potential customer* who has just rejected the liability policy.

We have previously held: "This Court will not decide abstract or hypothetical questions disconnected from the granting of actual relief or make determinations where no practical relief may be granted." *Rogers v. Excise Bd. of Greer County,* 701 P.2d 754, 761 (1984). Therefore, even if this Court had decided that a self-insured car rental company must provide uninsured motorist coverage to its customers who accept liability coverage, it would have no effect on this case because, according to the facts set forth in the majority opinion, the appellant rejected such coverage. Accordingly, I must dissent.

OF ANY SUCH PROTECTION. In the event that such coverage is imposed, by operation of law, for the benefit of persons other than You or any Authorized Operators, then the limits of such coverage shall be the minimum required by the law of the jurisdiction in which the accident occurs. Hertz warrants that the protection described in this paragraph is primary with respect to any [illegible] coverage You or any Authorized Operators may have...." Because the majority opinion has determined not to address the effects of this provision, it has treated the facts as though no liability coverage was provided to the appellant by Hertz.