Dear Governor Fallin,
¶ 0 This office has received your request for an official Attorney General Opinion in which you ask, in effect, the following questions:
1. Does the "Telemarketer Restriction Act," 2002 Okla. Sess.Laws ch. 72, §§ 1-7 (to be codified at 15 O.S. Supp. 2002, §§775B.1-775B.7), authorizing the Office of the AttorneyGeneral to implement a statewide registry of consumers who desirenot to receive unsolicited telemarketing sales calls, extend towireless telephone consumers who desire not to receiveunsolicited telemarketing sales calls on their wirelesstelephones?
 2. Does the Telemarketer Restriction Act's prohibition ontelemarketers making an "unsolicited telemarketing sales call toany consumer more than thirty (30) days after the consumer's nameand telephone number or numbers first appear on the registry madeavailable by the Attorney General" include unsolicitedtelemarketing sales calls that are transmitted in the form ofwhat is commonly referred to as "text messages"? Id. § 6(A)(to be codified at 15 O.S. Supp. 2002, § 775B.6(A)).
 The Telemarketer Restriction Act
¶ 1 The Telemarketer Restriction Act ("TRA"), 2002 Okla. Sess.Laws ch. 72, §§ 1-7, (to be codified at 15 O.S. Supp. 2002, §§775B.1-775B.7), sets out a regulatory scheme for certain telemarketing sales calls. Pursuant to the TRA, the Attorney General shall establish and maintain a registry of consumers who "desire not to receive unsolicited telemarketing sales calls."Id. § 3 (to be codified at 15 O.S. Supp. 2002, § 775B.3[15-775B.3]). Consumers may register by notifying the Attorney General of their desire to be on the registry. Id. § 4 (to be codified at 15O.S. Supp. 2002, § 775B.4[15-775B.4]). Thereafter, the TRA prohibits regulated telemarketers from calling "any consumer more than thirty (30) days after the consumer's name and telephone number or numbers first appear on the registry made available by the Attorney General." Id. § 6(A) (to be codified at 15 O.S. Supp.2002, § 775B.6[15-775B.6] (A)). The law, however, does not prohibit all telemarketing. The Legislature defined telemarketing as:
 [A]ny plan, program, or campaign which is conducted for commercial purposes, by use of one or more telephones and which involves a telephone call initiated by a telemarketer to a consumer located within this state at the time of the call;" telemarketing" may include use of random dialing or other devices for such purposes and use of recorded or simulated voices." Telemarketing" does not include a telephone call which is made for the sole purpose of arranging a subsequent face-to-face meeting between a salesperson and the consumer.
Id. § 2(6) (to be codified at 15 O.S. Supp. 2002, §775B.2[15-775B.2] (6)).
¶ 2 You have asked for clarification of the newly-enacted TRA.
 The Issues Raised By Your Questions
¶ 3 Your questions raise two issues. The first is whether consumers may register telephone numbers for their wireless telephones pursuant to the statutory scheme. If so, telemarketers must refrain from making unsolicited commercial telemarketing sales calls to the wireless telephone numbers on the registry. The second is whether a telemarketer making an unsolicited commercial telemarketing sales call which is conveyed as a text message must comply with the TRA's provisions.
 Statutory Construction Of The TRA
¶ 4 The primary goal of statutory construction is to ascertain and follow the intention of the Legislature. Estate of LittleBear, 909 P.2d 42, 49 (Okla. 1995). "[W]hen the language of a statute is plain and unambiguous, and its meaning clear and unmistakable, there is no room for construction beyond the statute itself." Id. at 50. "[I]ntent is ascertained from the whole act based on its general purpose and objective." McSorleyv. Hertz Corp., 885 P.2d 1343, 1346 (Okla. 1994).
 First Question
¶ 5 To answer your first question, we must determine whether the Legislature intended "telephone number or numbers" to include wireless telephone numbers. "Wireless" is not mentioned in the TRA. "Telephone," although mentioned, is not defined in the TRA or any other Oklahoma statute. Hence, we look to ordinary meanings, because in the absence of a contrary definition of the common words used in the act, we must assume that the law-making authority intended for the words to have the same meaning as that attributed to them in ordinary and usual parlance. See 25 O.S.2002, § 1[25-1]; Riffe Petroleum Co. v. Great Nat'l Corp.614 P.2d 576, 579 (Okla. 1980). In ordinary meaning, telephone is "an instrument for reproducing sounds [especially] articulate speech at a distance[.]" Webster's Third New International Dictionary 2350 (3d ed. 1993). "Wireless telephones are hand-held [telephones] with built-in antennas, often called cell, mobile, or PCS phones." Federal Communications Comm'n, Consumer 
Governmental Affairs Bureau, Wireless, athttp://www.fcc.gov/cgb/cellular.html (last modified May 22, 2002). The use of the word "telephone," therefore, includes wireless telephones.[1]
Second Question
¶ 6 We have determined, in answer to your first question, that the Legislature intended the term "telephone numbers" to include wireless telephone numbers. You next ask whether solicitations in the form of text messages are covered by the TRA.
¶ 7 There is no reference to "text messaging" in the TRA. Text messaging or short messaging services are provided through a variety of devices, including wireless telephones and pagers.See The Complete Cell-Phone Guide, Consumer Reports, Feb. 2002 at 1, available athttp://www.consumerreports.org/main/detailv2.jsp?CONTENT%3C%3Ecnt_id=139605FOLDER%3C%3Efolder_id=18151bmUID=1031927846484
Wireless telephones allow for short text messages to be sent to and received by wireless telephones. See Federal Communications Comm'n, Consumer Governmental Affairs Bureau, What You shouldKnow About Wireless Phone Service, at 7 (last modified July 1, 2002) available at http://www.fcc.gov/cgb/wirelessphone.pdf.
¶ 8 It is now possible for the customers of major United States wireless carriers to send text messages to each other. Some carriers charge a fee to the sender and receiver of the message. John Markoff, U.S. Cellphone Users Don't Seem to Get MessageAbout Messaging, N.Y.Times, Sept. 2, 2002, at C3.
¶ 9 To answer your question, we will review the purpose of the TRA in conjunction with its statutory language.
1. Purpose of the TRA
¶ 10 Although the TRA does not contain legislative findings, the Legislature enacted the TRA as a part of the Commercial Telephone Solicitation section of the Oklahoma Consumer Protection Act, 15 O.S. 2001, §§ 775A.1-775A.5. The Commercial Telephone Solicitation section begins:
 The Legislature hereby finds, determines and declares that the use of telephones for commercial solicitation is rapidly increasing; that this form of communication offers unique benefits, but entails special risks and poses the potential for abuse; that the Legislature finds that the widespread practice of fraudulent and deceptive commercial telephone solicitation has caused substantial financial losses to thousands of consumers and, particularly, elderly, homebound and otherwise vulnerable consumers, and is a matter vitally affecting the public interest; and, therefore, that the general welfare of the public and the protection of the integrity of the telemarketing industry requires statutory regulation of the commercial use of telephones.
Id. § 775A.1.
¶ 11 Enacted in 1994, the Commercial Telephone Solicitation provision regulates commercial telephone solicitations and requires registration of some telemarketers. In 1994, the Legislature acknowledged the potential for abuse by some telemarketers and enacted a regulatory regime for the public good. By 2002 the Legislature determined that current circumstances called for additional measures.
¶ 12 We presume that the legislators considered contemporary circumstances when they passed these laws. See Sheridan Oil Co.v. Superior Court of Creek County, 82 P.2d 832, 834 (Okla. 1938). When Oklahoma's legislators enacted the TRA, they knew that emerging technology expands the potential for abuse. They knew that consumers must often pay to receive unwanted solicitations. See Jennifer Bayot, Now That Ringing CellphoneMay Be a Telemarketer's Call, N.Y. Times, July 5, 2002, at A1. The legislators also knew about telemarketing fraud through the use of text messaging. See Federal Trade Commission, Bureau of Consumer Protection, Phone, E-Mail, and Pager Messages maySignal Costly Scams, Federal Trade Commission Consumer Alert, December 1996,http://www.ftc.gov/bcp/online/pubs/alerts/phonscam.html. This potential for harm to the public drove the Legislature to craft a solution: the no-telemarketing-sales-call registry.
2. Statutory Language
¶ 13 Keeping in mind the statutory purpose to protect consumers, we turn to the statutory language of the TRA. As noted, the TRA prohibits certain unsolicited telemarketing calls to consumers' registered telephone numbers. 2002 Okla. Sess.Laws ch. 72, § 6(A) (to be codified at 15 O.S. Supp. 2002, §775B.6[15-775B.6] (A)). Pursuant to the statutory scheme, telemarketing:
 [M]eans any plan, program, or campaign which is conducted for commercial purposes, by use of one or more telephones and which involves a telephone call initiated by a telemarketer to a consumer located within this state at the time of the call; "telemarketing" may include use of random dialing or other devices for such purposes and use of recorded or simulated voices.
Id. § 2(6) (to be codified at 15 O.S. Supp. 2002, §775B.2[15-775B.2] (6)).
¶ 14 This language shows that the action — telemarketing — is set into motion by the telemarketer. The telemarketer initiates telemarketing by using one telephone, many telephones, or automated devices. The action of telemarketing does not require that the consumer receive it in any particular form or on any particular device.
¶ 15 The TRA does not limit its protections to voice messages received by consumers on a telephone. Rather, it extends to any unsolicited commercial telemarketing which was initiated by a telemarketer covered by the TRA.
¶ 16 It is, therefore, the official Opinion of the AttorneyGeneral that:
 1. The Telemarketer Restriction Act, 2002 Okla. Sess. Lawsch. 72, §§ 1-7 (to be codified at 15 O.S. Supp. 2002, §§775B.1-775B.7), authorizing the Office of the AttorneyGeneral to implement a statewide registry of the telephonenumbers and names of consumers who desire not to receiveunsolicited telemarketing sales calls, includes consumers withwireless telephone numbers.
 2. The Telemarketer Restriction Act, which prohibitstelemarketers from making unsolicited telemarketing sales callsto any consumer more than thirty (30) days after the consumer'sname and telephone number(s) first appear on the registry madeavailable by the Attorney General, (id. § 6(A) (to becodified at 15 O.S. Supp. 2002, § 775B.6(A)) includesunsolicited telemarketing sales calls which are transmitted inthe form of what is commonly referred to as "text messages."
W.A. DREW EDMONDSON Attorney General Of Oklahoma
JANE WHEELER Assistant Attorney General
[1] One might ask why the term "residential subscriber," rather than "consumer," appears in the definition of "established business relationship" when "consumer" is used everywhere else throughout the TRA. Regardless of the term used, the fact remains that the TRA allows consumers to register their wireless telephone numbers.