NOTICE:  This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports.  Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press.  Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release.  The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Grafton
No. 2018-0130

THE STATE OF NEW HAMPSHIRE

v.

DAVID VINCELETTE

Argued: May 8, 2019
Opinion Issued: July 9, 2019

Gordon J. MacDonald, attorney general (Susan P. McGinnis, senior assistant attorney general, on the brief and orally), for the State.


Eric S. Wolpin, assistant appellate defender, of Concord, on the brief, and Anthony Naro, public defender, orally, for the defendant.


BASSETT, J.  The defendant, David Vincelette, appeals a decision of the Superior Court (Bornstein, J.)[1] finding that he committed criminal contempt by violating a January 2016 trial court order that prohibited him from interfering with the Town of Hanover's efforts to remove debris from a right of way and Town-owned nature preserve.  The defendant argues that "[t]he court erred by finding that the State presented sufficient evidence that [he] intentionally violated the court's order."  We affirm.

---

[1] Judge Bornstein presided over the criminal contempt trial but did not preside over the previous civil contempt proceedings.

The pertinent facts are as follows. The Town-owned nature preserve is accessed by a deeded right of way that crosses land where the defendant resides. In May 2015, the trial court found that the defendant had "placed numerous objects," including wood pallets, abandoned vehicles, boats, and appliances on the nature preserve and on the right of way such that the right of way was "narrow[ed] . . . to such a width that it is difficult for a vehicle to access the [T]own's property." The trial court ordered the defendant to remove the debris by June 1, 2015.

In September 2015, the trial court found the defendant in civil contempt of court for violating the May order, and again ordered him to remove the debris from the right of way and nature preserve. In October 2015, when the defendant had failed to comply with the September order, the trial court found the defendant in civil contempt for a second time. The trial court ordered him "to immediately cease interfering with the [Town's] exercise of its rights to remove the defendant's materials from the right of way and the [Town's] property," and provided that "[t]he [Town] may resume removing the defendant's debris."

In November 2015, the defendant parked his pickup truck across the right of way, which blocked the Town's access to the right of way and the nature preserve. The Town filed a third motion for contempt and the court held a hearing in January 2016. After the hearing, the trial court issued yet another order in which it concluded that the defendant's November 2015 conduct "was in violation of the October 29, 2015 order." Although the court declined to find the defendant in contempt because the defendant had moved his truck after 10-15 minutes, it ordered the defendant "to immediately cease interfering with the [Town's] exercise of its rights to remove the defendant's [debris] from the right of way and the [Town's] property."

In May 2016, employees of the Hanover Department of Public Works, accompanied by members of the Grafton County Sheriff's Department, went to the right of way with heavy equipment intending to remove the debris from the right of way and the nature preserve. When they entered the right of way, they encountered the defendant and a confrontation ensued, much of which was recorded by the police in a forty-five minute video. Lieutenant Kelly, from the Sheriff's Department, gave the defendant a copy of the January 2016 court order and read portions of it aloud. The defendant responded that the Town could not use vehicles to remove the debris. He asserted that, although the deed creating the right of way allowed him to drive his personal vehicle on the right of way, the Town was allowed to drive vehicles on the right of way solely for maintenance or emergencies. The defendant stood in close proximity to the Town employees while yelling and swearing at them, told them that they would be held liable for engaging in illegal activity, declared that they could not use vehicles to remove the debris, and repeatedly ordered them to leave. For approximately five minutes, the defendant sat on, or stood near, the wood

pallets that the trial court had previously decreed the Town had a right to remove. He also made repeated physical contact with a Town employee, after which Kelly positioned himself between the defendant and the employee. At one point the defendant approached a moving dump truck while shouting, "no, no, no, no trucks down here . . . hey stop." On multiple occasions, the defendant's close proximity to the Town's vehicles caused the Town employees to stop working. The Town employees and law enforcement officers ultimately decided to leave after the defendant repeatedly said that he was not going to allow them to remove the debris.

In September 2016, after the Town had filed another motion for contempt, the trial court held another hearing. The trial court found the defendant in civil contempt of court for a third time, and referred the case to the Grafton County Attorney's Office. The defendant was charged with criminal contempt for violating the January 2016 order. The State alleged that, on May 16, 2016, the defendant committed six acts which interfered with the Town's removal of the defendant's debris from the right of way and the nature preserve. Five acts involved the defendant's statements and one involved the defendant's physical acts. The State alleged that the defendant physically interfered with the Town's actions by "[c]reating a dangerous situation by walking up to and/or behind and/or in between the heavy machinery brought by Town of Hanover employees."

The trial court conducted a two-day bench trial that concluded in December 2017. The Operations Manager for the Town of Hanover Department of Public Works testified that the defendant, in response to the Town's attempts to remove the debris, was "very aggressive," moved within five feet of the heavy equipment, and made the situation "unstable" and "not . . . safe." Kelly testified that the defendant had yelled and cursed, and "walk[ed] in between the heavy equipment" which "stopped what was going on because [Town employees] were concerned about the safety risk of him, not knowing where he is and how he was acting." Kelly also testified that the defendant's "attitude and his mannerisms were escalating; they weren't de-escalating, they were escalating. And we made a decision where it was the safety of everybody to withdraw from the area and come back at another day." The defendant introduced into evidence the forty-five minute police video of his interactions with Town employees and law enforcement.

In January 2018, the trial court issued an order concluding that "[t]he evidence established beyond a reasonable doubt that the defendant intentionally committed each of the charged acts in violation of the Order and that he acted purposely." The trial court found the defendant guilty of criminal contempt, noting that it "was able to observe the defendant's conduct, speech, tone of voice, manner, and demeanor" from the video. The trial court also concluded that none of the charged conduct was protected speech under either the Federal or State Constitutions. The trial court imposed a four-month

3

sentence. It suspended, for two years, all but the eight days that the defendant had already served, on the condition that he remain of good behavior and continue treatment through the U.S. Department of Veteran's Affairs. The trial court denied the defendant's motion to reconsider, and this appeal followed.

On appeal, the defendant argues that the State introduced insufficient evidence to prove that, on May 16, 2016, he violated the January 2016 order, and that he acted with the requisite intent. A challenge to the sufficiency of the evidence raises a claim of legal error; therefore, our standard of review is de novo. State v. Morrill, 169 N.H. 709, 718 (2017). To prevail upon a challenge to the sufficiency of the evidence, the defendant must prove that no rational trier of fact, viewing all of the evidence and all reasonable inferences from it in the light most favorable to the State, could have found guilt beyond a reasonable doubt. Id.

A defendant's intent often must be proved by circumstantial evidence and may be inferred from the defendant's conduct under all the circumstances. State v. Zubhuza, 166 N.H. 125, 130 (2014). When the evidence as to an element of proof is solely circumstantial, it must exclude all reasonable conclusions except guilt. See Morrill, 169 N.H. at 718-19. However, the proper analysis is not whether every possible conclusion consistent with innocence has been excluded, but, rather, whether all reasonable conclusions based upon the evidence have been excluded. State v. Germain, 165 N.H. 350, 361 (2013), modified on other grounds by State v. King, 168 N.H. 340, 345 (2015). We do not review each circumstance proved in isolation or break the evidence into discrete pieces in an effort to establish that, when viewed in isolation, these evidentiary fragments support a reasonable hypothesis other than guilt. Id. at 362. Rather, we must consider whether the circumstances presented are consistent with guilt and inconsistent, on the whole, with any reasonable hypothesis of innocence. Id.

Criminal contempt is a sanction imposed by the trial court when a defendant has intentionally failed to comply with a valid order of which the defendant had knowledge. State v. Smith, 163 N.H. 13, 18-19 (2011). Indirect contempt is committed outside the presence of the judge, without the judge having personal knowledge of every element of contempt. Id. at 19. To prove indirect criminal contempt, the State must prove beyond a reasonable doubt the existence of a valid order, the defendant's knowledge of the order, and the defendant's intentional failure to comply with the order. Id.; see also State v. Linsky, 117 N.H. 866, 872 (1977). The defendant does not challenge the validity of the January 2016 order, or his knowledge thereof. Rather, he contends that the State has failed to meet its burden to adduce sufficient evidence to prove that his actions on May 16, 2016, violated the order and that he acted with the requisite intent. We are not persuaded.

4

The January 2016 order explicitly stated that the defendant had violated a previous order requiring him "to immediately cease interfering" when he had parked his vehicle across the right of way — blocking the Town's vehicular access to the right of way and the nature preserve. (Quoting October 15, 2015 order.) The January 2016 order commanded "the defendant . . . yet again to immediately cease interfering with the [Town's] exercise of its rights to remove the defendant's [debris] from the right of way and the [Town's] property," and "caution[ed] the defendant that should he interfere further with the [Town's] right to access the right of way and/or its removal [of] his [debris] he may be found in contempt and possibly incarcerated on that basis." The trial court warned the defendant that he "risk[ed] arrest and criminal prosecution for contempt or on other grounds should he threaten the [Town's] employees or continue to interfere with the [Town's] lawful actions." Therefore, the January 2016 order plainly stated that interfering with the Town's vehicular access to the right of way would constitute a contemptuous act.

The police video shows that on May 16, 2016, the defendant's physical acts interfered with the Town's vehicular access to the right of way and interfered with the Town's ability to remove debris. The video shows that the defendant approached and stood near the heavy equipment, which prevented its safe operation; sat on a pile of wood pallets that previous trial court orders had authorized the Town to remove; repeatedly — and aggressively — asserted that the Town could not operate vehicles on the right of way; repeatedly made physical contact with a Town employee; and belligerently ordered the law enforcement officers and Town employees to leave. Indeed, in reaction to the defendant's conduct, the Town ceased its efforts to remove the debris because, as Kelly testified at the hearing, the "safety of everybody" required the employees to "withdraw from the area and come back at another day." Based on this evidence, and all reasonable inferences from it viewed in the light most favorable to the State, we conclude that a rational fact-finder could have found that the defendant interfered with the Town's ability to access the right of way and nature preserve for the purpose of removing the defendant's debris. See Morrill, 169 N.H. at 718.

The defendant next argues that the State did not adduce sufficient evidence to prove that he acted with the requisite intent. To find the defendant guilty of criminal contempt, the State must prove that the defendant "intentionally" failed to comply with the order. Smith, 163 N.H. at 18-19. For purposes of determining the mens rea for an offense, "intentionally" is synonymous with "purposely." See, e.g., State v. Thomas, 168 N.H. 589, 601 (2016). RSA 626:2, II(a) establishes that "[a] person acts purposely with respect to a material element of an offense when his conscious object is to cause the result or engage in the conduct that comprises the element." RSA 626:2, II(a) (2016).

"Intent for purposes of criminal contempt is subjective, not objective . . . ." 17 C.J.S. Contempt § 6, at 15 (2011). However, intent can be established by circumstantial evidence, see Linsky, 117 N.H. at 875, and "must necessarily be ascertained from all the acts, words, and circumstances surrounding the occurrence." 17 C.J.S. Contempt § 6, at 15. Therefore, when we review the totality of the evidence as to whether the defendant subjectively intended to violate the order through his physical actions, we must consider all of the defendant's words and actions from May 16, 2016 — not just the select few to which the defendant directs our attention. See Morrill, 169 N.H. at 718. We must also evaluate the evidence in the light most favorable to the State to determine whether the alternative hypothesis advanced by the defendant — namely that it was not his conscious object to violate the order — is sufficiently reasonable that the trier of fact could not have found proof of guilt beyond a reasonable doubt. Germain, 165 N.H. at 361-62.

The defendant acknowledges that the January 2016 order prohibited him from interfering with the Town's "lawful actions." However, he argues that, because he believed that the Town's use of vehicles on the right of way was unlawful under the deed that created the right of way, "even if he intended to interfere with the Town's removal of his property," "[a]ny action he took to interfere with what he perceived as unlawful actions was not an intentional violation of the trial court's order." He urges us to take into account the statements he made to law enforcement and Town employees on May 16, 2016 — specifically, "I've told you a hundred times you can come down anytime you want [and] take anything you want . . . no equipment, just look at the deed," and "I'm not blocking you [and] the road's not blocked" — as proof that his subjective intent was not to violate the order. He further contends that, if he had intended to violate the order by physically interfering with the Town's vehicles, "he would have used his person or property to create an immovable obstruction as he had done in the past."

The January 2016 order plainly stated that the Town had the right to remove the defendant's debris from the right of way and nature preserve, and established that interfering with the Town's vehicular access to the right of way, or interfering with the Town's removal of his debris, would be a contemptuous act. And yet, undeterred, as the police video from May 16, 2016, shows, the defendant told Town employees and law enforcement that "you're not gonna take the stuff that's not yours" and "you're not allowed to steal" — statements which provide insight into the defendant's mental state and give context to his physical acts. The police video also shows that the defendant approached a moving dump truck while shouting "no, no, no, no trucks down here . . . hey stop." He then passed within inches of the truck, which forced it to stop. He subsequently stood on the right of way between a moving dump truck and a backhoe and the Town employee had to stop the truck to avoid him. For several minutes, the defendant stood in the right of way between the two Town vehicles exclaiming "you're not bringing any

machines down to f\*\*k with me" and "get these f\*\*king machines out of here." Given the totality of the evidence, and viewing the evidence in the light most favorable to the State, we conclude that the defendant has not met his burden to demonstrate that no rational trier of fact could have found beyond a reasonable doubt that — by physically interfering with the Town's removal of the debris — the defendant's subjective, conscious object was to violate the January 2016 order. See RSA 626:2, II(a); Germain, 165 N.H. at 362.[2]

Because we have concluded that the evidence is sufficient to prove that the defendant purposely violated the order through his physical acts, we need not consider his remaining arguments, which relate to the sufficiency of the evidence pertaining to the five speech-based acts that the trial court found that the defendant committed in violation of the order. Dionne v. City of Manchester, 134 N.H. 225, 230 (1991) (declining to address parties' other arguments where holding on one issue is dispositive). As defense counsel conceded at oral argument, because the State charged the defendant in the alternative, the trial court could have found the defendant guilty of criminal contempt if it concluded that he purposely committed any one of the six charged acts. Therefore, because the evidence is sufficient to prove that the defendant purposely violated the order through his physical acts, we must affirm. See Turner v. United States, 396 U.S. 398, 420 (1970) (observing the general rule that when a defendant is found guilty, "on an indictment charging several acts in the conjunctive . . . the verdict stands if the evidence is sufficient with respect to any one of the acts charged").

The defendant did not brief the additional issues raised in his notice of appeal and thus we deem them waived. See In re Estate of King, 149 N.H. 226, 230 (2003).

Affirmed.

LYNN, C.J., and HICKS, HANTZ MARCONI, and DONOVAN, JJ., concurred.

---

[2] To the extent that the defendant is arguing that, as a matter of law, he could not have had a subjective intent to violate the order because he actually believed that Town use of vehicles on the right of way was unlawful, he is mistaken. If a person believes a court order is incorrect, the proper remedy is to appeal the order. Maness v. Meyers, 419 U.S. 449, 458 (1975). Absent a stay, the person must comply with the order pending appeal. Id.; see also City of Lebanon v. Townsend, 120 N.H. 836, 839 (1980). "[I]n the fair administration of justice no man can be judge in his own case . . . ." Walker v. City of Birmingham, 388 U.S. 307, 320 (1967). Therefore, "[p]ersons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect." Meyers, 419 U.S. at 458.